**CITY OF CLEVELAND,**
**Plaintiff-Appellee,**

v.

**PETER KIEWIT SONS' CO.,**
**Defendant-Appellant.**

No. 78–3029.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1980.

Decided June 18, 1980.

Roman T. Keenen, Ray, Robinson, Keenen & Hanninen, Lucian Y. Ray, Cleveland, Ohio, for defendant-appellant.

James B. Davis, Director of Law, Nicholas M. DeVito, Asst. Director of Law, John H. Kless, Cleveland, Ohio, for plaintiff-appellee.

Before EDWARDS, Chief Judge, and WEICK and BROWN, Circuit Judges.

WEICK, Circuit Judge.

The suit in the District Court was instituted by the City of Cleveland (City) against Peter Kiewit Sons' Co. (Kiewit) to recover damages to an old 1908 dilapidated waterfront dock no longer used for its original purposes, a portion of which Kiewit had been using for a short time for loading purposes under a lease arrangement with the City. Jurisdiction was based on diversity of citizenship.

The case was tried before a jury which returned a verdict in the amount of $350,-000 plus costs which was the full amount prayed for and judgment was entered therefor. Kiewit filed a motion for judgment n. o. v. or for a new trial.

Portions of the old dock collapsed sometime after the termination of the lease arrangement with the City when Kiewit was not in possession and the collapses occurred not only in the area which had been leased to Kiewit but in areas some distance away therefrom. It was the theory of the defense that the dock collapses resulted from old age of the dock and lack of repair over the years and were not caused or contributed to by Kiewit.

The District Court, in ruling on the motion for a new trial, ordered a 50 percent remittitur in the amount of $175,000 on the ground that the verdict was grossly excessive and that the jury had not followed its instructions on betterment which would result in the reconstruction of a practically new dock when all the City was entitled to recover, if liability existed, was damages to the old dock.

The City declined to accept the remittitur and the court granted a new trial but only on the issue of damages. Kiewit contends that the new trial should also be granted on the issue of liability for two reasons, namely, (1) the court held that the jury did not follow the court's instructions on betterment and (2) misconduct of counsel for the City in making deliberate and persistent appeals to passion and prejudice including that Kiewit is a "large, international corporation, with headquarters in Omaha and New Jersey"; that it has "a multi-million dollar contract with the Corps of Engineers"; "that it has insurance coverage and can pay any judgment which is awarded

against it"; that the taxpayers of Cleveland should not have to pay the bill.

Objections to the misconduct were repeatedly made and sustained and the court continually admonished and finally reprimanded counsel but he paid no attention to the admonitions or reprimand and made prejudicial remarks in his closing argument to the jury.

Kiewit appealed from the judgment before the court ruled on its motion for judgment n. o. v. or for a new trial. While the case was pending in this court on appeal the trial court denied the motion for judgment n. o. v. and ordered the remittitur and when it was not accepted granted a new trial only on the issue of damages. The court then at our suggestion, certified the appeal to this court under the provisions of 28 U.S.C. § 1292(b) and we allowed it.

For the reasons hereafter stated, we reverse for misconduct of counsel for the City and remanded for a new trial on all issues.

I

Dock 34, the dock in question, was originally constructed in the year 1908. In recent years, because of its deterioration and lack of repair, it was no longer used for its original purpose and only a small portion of which was being used chiefly as a parking lot for nearby sporting events, and for the mooring of a schoolship and a pleasure boat. In 1973, Peter Kiewit Sons' Co., a contracting firm headquartered in Omaha, Nebraska (and incorporated in that state), was engaged in performing dike construction and dike modification at another place in the Cleveland Harbor, pursuant to a contract with the Corps of Engineers. Kiewit entered into the permit agreement with the City whereby Kiewit was permitted to use a portion of the dock to load blast furnace slag on barges to be transported to the dike project. Under the agreement, Kiewit was permitted to occupy and use a 100 × 400 foot portion of the southwest corner of the dock from July 9, 1973, to and including

October 12, 1973 (except for six days in late July when the area would be occupied by a carnival). Kiewit agreed to pay the City therefor $2,000 a month.

Kiewit actually occupied the dock site from July 16 to and including October 6 (except for the period from July 21 through July 30 when it was used by the carnival); the dock was used for the slag loading operation from August 1 to October 6. The slag loading operation consisted of trucking slag to the dock, where the slag was piled and then loaded onto barges for transportation to the breakwall some distance away. The operations were concluded, and Kiewit vacated the dock on October 8, 1973.

On October 24, 1973, after Kiewit had surrendered possession to the City, portions of the dock collapsed. The portion that collapsed included only a small section of the area which had been leased to Kiewit; the major portion of the area which collapsed was not within the section that had been leased to and used by Kiewit.

The City of Cleveland filed suit against Kiewit in the Court of Common Pleas of Cuyahoga County in a three-count complaint. The three causes of action alleged reflected different theories of law under which the plaintiff sought to impose liability on defendant for the collapses of the dock. The action was removed on the basis of diversity of citizenship to the United States District Court for the Northern District of Ohio on August 28, 1974. The City sought recovery of $350,000 in compensatory damages plus interest. Following a November 1976 trial which lasted six days, the jury[1] returned a general verdict in favor of the City and against Kiewit in the amount of $350,000. Judgment was entered thereon plus costs. Kiewit then filed a timely motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, alleging misconduct of counsel for the City as one of the three grounds that "the remarks, argument and questioning of wit-

---

1. Of the six members of the jury, three were residents of the City of Cleveland, and the other three resided in Cuyahoga County.

nesses by plaintiff's counsel regarding liability insurance and defendant's financial resources, considered in total, were prejudicial."

The District Judge ordered a remittitur of $175,000, and stated that, if the remittitur were not accepted within thirty days, he would grant a new trial on the issue of damages. In his November 15, 1977 memorandum opinion, Judge Green stated, inter alia:

As to the question of liability, the Court is satisfied that the record is sufficient to support a verdict in plaintiff's favor.

. . . . .

While defendant's arguments regarding plaintiff's knowledge and conduct are founded on evidence in the record and might be sufficient to convince the Court, as trier of fact, that plaintiff should not recover . . ., in the Court's opinion, the evidence presented enough contested questions of fact that the jury's rejection of defendant's defenses predicated upon waiver and contributory negligence cannot be set aside as a matter of law.

. . . . .

. . . the Court is convinced that the verdict is grossly excessive, and believes *that the amount of the verdict may have been influenced in that regard by conduct of plaintiff's counsel.* (emphasis added).

. . . . .

While the Court recognizes that the mention of insurance was inevitable in the course of the trial by reason of the fact that matters of insurance coverage were included in the contracts between the parties, in the Court's opinion plaintiff's

counsel went beyond the bounds of necessity and propriety in certain questions and comments on the matter.

. . . . .

*While . . . whenever the subject of insurance was improperly approached, the Court sustained defendant's objections, the import of the questioning cannot be eradicated from the jury's consciousness.* (emphasis added)

. . . . .

Similarly, while there was a tenable argument that defendant's size was relevant to the question of its expertise which in turn could be relevant to its knowledge of conditions pertaining to the dock, it was not necessary to make mention of defendant's status as a leader in the field of marine engineering in the manner and with the frequency that plaintiff's counsel did.

. . . . .

*It is the Court's belief that the foregoing course of conduct may have well influenced the jury's determination on damages . . . .* (emphasis added)

The City thereafter advised the District Court that it would decline to accept the remittitur, and would instead proceed to a new trial on the issue of damages. The court then ordered a new trial solely on the issue of damages, with the trial date to be set following this appeal.[2]

The comments which are at issue here began early in the City's opening statement to the jury, when Nick DeVito, an Assistant Law Director of the City, stated that "the defendant is Peter Kiewit and Sons, a corporation whose headquarters are in Omaha, Nebraska . . . Peter Kiewit is one of

---

2. During the interval when the City was to consider whether it would accept the remittitur, Kiewit took an appeal from the judgment based upon the jury's verdict and the judgment thereon. Neither party raised or questioned the appealability of said judgment, despite the fact that, later, the district court, upon learning that the City would not accept remittitur, had ordered a new trial solely on the issue of damages. At oral argument before this Court, it was suggested that, in order to obviate the necessity of a determination as to the appeala-

bility of the aforementioned judgment, the parties apply to the trial court for certification, pursuant to 28 U.S.C. § 1292(b), that the district court's order involved a controlling question of law as to which there was substantial ground for difference of opinion, and that an immediate appeal from it might materially advance the ultimate termination of the litigation. The parties subsequently filed a joint motion to that effect in the district court, which granted the motion. This Court then granted leave to appeal.

the largest construction corporations." Counsel for Kiewit promptly objected; the Court explained that "if they (plaintiff) can prove that in their evidence, I will overrule the objection, but if they can't, I will then admonish the jury to disregard it." Mr. DeVito then proceeded to tell the jury that "Peter Kiewit Co. is one of the largest construction corporations in the United States . . . it has international operations throughout the world. Its marine division is headquartered in New Jersey, and . . . you will have . . . testimony . . . from some of its executives from that part of the country." Mr. DeVito then stated that Kiewit, in 1973, "was awarded approximately a $9 million contract with the United States Corps of Army Engineers." Kiewit's attorney objected, but was overruled by the court. Counsel for the City then repeated his statement about the $9 million contract. At the conclusion of the plaintiff's opening statement, the court admonished the jury as to Mr. DeVito's remarks that Kiewit was one of the nation's largest construction companies, and that the defendant had a $9 million contract with the Corps. The court instructed the jury that "these two statements standing by themselves are not to be considered in your deliberations . . . the fact that they were large or that they had a large monetary contract with the United States government has no bearing on the case whatsoever."

During direct examination of Robert Jones, a witness for the City, Mr. DeVito, referring to Kiewit, inquired "How big a company is that?" Counsel for Kiewit promptly objected, but the Court permitted Jones to answer that defendant had "a rather large, good credit rating" and was a large corporation. Mr. DeVito asked where Kiewit was headquartered, and Jones responded "Omaha, Nebraska." Mr. DeVito also inquired whether Kiewit had a marine division, and where it was headquartered; Jones replied that defendant's marine division headquarters was located in Tenafly, New Jersey. Counsel for the City then asked: "Do you know the size of the contract that they had with the federal govern-

ment?" Kiewit's attorney objected immediately, and was sustained.

During cross-examination of William Bogas, a witness for the City, the attorney representing Kiewit asked several questions concerning a provision of the permit agreement, under the terms of which Kiewit was obligated to take out a general public liability insurance policy in the amount of $300,-000 and $100,000. The witness acknowledged that the City was named as an additional insured, so that the insurance protected the City as well as Kiewit from liability to third persons. The witness testified that he did not know whether the City had made any claims under the policy for damage to the dock.

Later, on redirect, the following exchange between Mr. DeVito and witness Bogas transpired:

Q: Are you aware of the contract between Peter Kiewit and the Corps of Engineers?

A: Yes.

Q: Do you know approximately the amount of that contract?

Counsel for Kiewit immediately objected, and the court sustained the objection.

Jack Frakes, a Kiewit employee who testified on behalf of the defendant, was asked on direct examination about the permit agreement's insurance provisions. Frakes acknowledged that the City had drafted the provisions, calling for a general public liability insurance policy with $100,000 and $300,000 limits, and, further, that Kiewit complied with the provisions and obtained said insurance which, as required by the contract, named the City as an additional insured.

On cross-examination, DeVito asked Frakes whether Kiewit "is a pretty big corporation?" Frakes answered: "It is a fair-sized corporation." DeVito then inquired "how large" Kiewit was in the field of marine engineering. The trial court permitted the witness to answer over objection. DeVito persisted in asking "how big" the defendant was, and finally the court interrupted: "I have already admonished

the jury that the largeness of the company doesn't make any difference as far as the verdict is concerned in this case."

Subsequently during the cross-examination of Frakes, the following exchange occurred:

Q: You talked about insurance. You did take out insurance?

A: Yes, sir.

Q: And you did have the City of Cleveland as an additional insured?

A: Yes, sir.

Q: And wasn't that in relation to claims from third parties?

A: Yes, sir, liability insurance.

Keenen (counsel for Kiewit): Objection, your Honor.

Court: Are you talking about liability insurance?

DeVito: Yes. I mean, Mr. Keenen represents an insurance company, doesn't he?

Keenen: Objection, your Honor.

Court: Objection sustained.

DeVito: Well, you tell me: Is there insurance involved in this particular case?

Keenen: Objection, your Honor.

Court: Objection sustained.

Keenen: I think that is highly prejudicial, your Honor, He asked three times.

Court: I will ask the jury to disregard that. Whether there is or not has no bearing on this lawsuit.

DeVito: Now, Peter Kiewit has many claims against it in various places throughout the world?

A: No.

Keenen: Objection.

Court: Objection sustained.

DeVito: Are you familiar with various claims and lawsuits against Peter Kiewit Co.?

Keenen: Objection.

Court: Sustained.

During cross-examination of defense witness Saada, the following transpired:

DeVito: Now, you talked about insurance just briefly. You said that you can only get insurance—

Court: Just one minute.

Denny (counsel for Kiewit): Objection.

Court: I don't recall anything about insurance.

Keenen: I can't recall anything about it. It is prejudicial at this point anyway. This is the third or fourth time he has done that.

Court: I am going to sustain the objection, and I am going to admonish counsel that he is not to talk about it.

DeVito: I would like to approach the bench.

Court: No. You can take exception.

DeVito: I am not talking about insurance in this case.

Court: I am not going to permit you to ask these questions.

Q: You have talked about buildings and you talked about buildings having a useful life; is that correct?

A: Yes, sir.

Q: And you also talked about the limit to which someone could acquire insurance on a building, is that correct?

A: The limits. My statement went something like that. I doubt very much anybody would give you insurance for something built for more than 50 years.

DeVito: Your Honor, if I may and I do not mean to be disrespectful to the Court, this is something he testified to earlier, and this is what I was going to ask him about.

Court: That you may do.

During his closing argument, Mr. DeVito again mentioned that Kiewit had undertaken a "seven or eight million dollar job, whatever it was that they were doing for the Corps of Engineers." Counsel for Kiewit promptly objected to the mention of said contract, which had not been admitted into evidence, and the Court admonished Mr. DeVito "not to comment on it."

During his summation, Mr. Keenen, representing Kiewit, said:

As far as the insurance permit that opposing counsel says is in the contract, read it for yourself. You will find that the City is the named insured, so that if there is any coverage under that contract for Peter Kiewit, the same coverage belongs to the City, and they could collect fully the limit in that policy.

The following colloquy ensued:

DeVito: Your Honor, I am going to object. That insurance was for third—

Court: I will sustain the objection. The insurance in the contract, so there will be no misunderstanding, is with reference to third party liability, and not as between the parties.

DeVito: That insurance does not extend between Peter Kiewit and the City, your Honor.

Court: They can read the contract for themselves.

In his rebuttal, Mr. DeVito stated that Kiewit was "a $75 million corporation in the marine engineering field." Mr. Keenen objected, and the Court, in sustaining the objection, admonished DeVito: "Now, you have done this before, Mr. DeVito, and I am going to have to reprimand you. I have said the size of the corporation makes no difference."

Finally, in concluding his summation, Mr. DeVito told the Jury:

I respectfully request that you discharge your responsibility in your own conscience as best you can and that you find for the City of Cleveland and that you make us whole and hold Peter Kiewit responsible for the damage that they have caused to the taxpayers of the City of Cleveland.

In his charge to the jury, Judge Green instructed:

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

Both the plaintiff, a municipal corporation, and the defendant, a private corporation, stand equal before the law, and are to be dealt with as equals in a court of justice.

II

Kiewit was entitled to a fair trial but, as we have pointed out, did not receive it because of the pervasive misconduct of counsel for the City.

It is Kiewit's position that counsel for the City was attempting to influence the jury that Kiewit was a huge corporation, protected by insurance, playing on the prejudices of the jurors as taxpayers of Cleveland, against the interests of a large out-of-state corporation. Kiewit acknowledges that the court made every reasonable effort short of mistrial and contempt to negate the effect of the improper comments. Kiewit contends that it is impossible to eradicate from the minds of jurors and thoughts which are planted there and the prejudices thus aroused. Kiewit emphasizes that the alleged misconduct was not isolated but rather permeated the entire trial from the beginning to the end. Kiewit urges that the excessive verdict (as indicated by the fact that the remittitur was one half of the jury's verdict), combined with the inflammatory comments by trial counsel for the City, demonstrates that prejudice was inherent. Kiewit argues that the District Court is not entitled to undue deference in determining the prejudicial effect, for the demeanor and veracity of witnesses are not at issue here. Finally, stressing that, the District Judge, in his memorandum opinion, concluded that counsel's misconduct may well have influenced the jury's determination on damages, Kiewit asserts that it is thus impossible to say that the influence did not spill over into the jury's consideration of liability as well.

In response, the City maintains that the topic of insurance was first raised by Kiewit's attorney. (Appellant disputes this, arguing that its reference to insurance related to a public liability policy designed to protect both Kiewit and the City in the event of third-party claims, which policy was part of the permit agreement and did not serve to protect Kiewit if the City asserted a claim against it.) Pointing out

that Kiewit had conceded that the jury was properly instructed, the City emphasizes that, in each instance where Kiewit objected to a question about the size of the company or the existence of insurance coverage, the trial court made a prompt ruling which precluded answer, or appropriately admonished the jury. Claiming that the mention of insurance in a case of this length and complexity would have no effect on the outcome of the verdict, the City insists that the practice of carrying insurance, particularly by construction contractors, is common knowledge. The City asserts that its questions about Kiewit's size concerned the issue of due care in the negligence count, and were intended to elicit Kiewit's level of knowledge about the dock, as well as Kiewit's ability to obtain additional information through its own testing.

The City argues that any potential prejudice was dissipated by objection and the court's instructions, and suggests that the impact of the comments was blunted by the six-day trial. Finally, the City contends that the trial court is in a far better position than an appellate court, to judge the effect of alleged trial misconduct. This argument is not persuasive in a case like this where the misconduct is so pervasive as to require action of an appellate court in the proper performance of its duties.

 This Court agrees that "the determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court." *Twachtman v. Connelly*, 106 F.2d 501, 509 (6th Cir. 1939). See also *Draper v. Airco, Inc.*, 580 F.2d 91, 94 (3rd Cir. 1978). Indeed, "whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination." *Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.*, 173 F.2d 844, 851 (10th Cir. 1949). "The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial . . . The trial court is in a far better position to measure the

effect of an improper question on the jury than an appellate court which reviews only the cold record." *Harris v. Zurich Insurance Co.*, 527 F.2d 528, 531 (8th Cir. 1975). See also *Travelers Fire Ins. Co., supra* at 851. It is for this reason that this Court has declared that "the power to set aside verdict for misconduct of counsel should be sparingly exercised on appeal." *Twachtman, supra* at 509. Yet, although appellate courts "are always reluctant to grant a mistrial because of counsel's prejudicial statements when the (trial) court has declined to do so," *Draper, supra* at 97; see also *New Amsterdam Casualty Co. v. Harrington*, 274 F.2d 323, 327 (5th Cir. 1960), it is nevertheless clear that "counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside." *Twachtman, supra* at 508–509.

 In determining whether "there is a reasonable probability that the verdict of a jury has been influenced" by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e. g. whether it is a close case), and the verdict itself.

In the case at bar, counsel for the City almost continuously sought to plant the seed in the minds of the jurors that Kiewit was a very large corporation with international operations. In addition to the comments recounted above, Mr. DeVito made several other remarks, and asked other questions designed to convey to the jury the image of the defendant as a giant in the field of marine engineering. For example, plaintiff's trial counsel managed to inform the jury that defendant's headquarters was located at "1000 Kiewit Plaza" leaving it for the jurors to draw the inevitable infer-

ence that defendant was a huge corporation. Similarly, Mr. DeVito suggested that Kiewit employed several attorneys at its headquarters. Since the Kiewit name is not, among the general public, synonymous with a "corporate giant," as, for example, IBM or General Motors would be, it is unlikely that the jurors would have been aware of defendant's size had Mr. DeVito not strived to so inform them at every opportunity. It was obviously an appeal to passion and prejudice.

The City has advanced the contention that its comments about Kiewit's stature were intended to show that defendant's ability and experience would enable it to determine the condition of the dock in advance of entering the agreement and beginning operations. Indeed, the court below noted that "there was a tenable argument that defendant's size was relevant to the question of its expertise which in turn could be relevant to its knowledge of conditions pertaining to the dock." Yet, the trial court emphasized that "it was not necessary to make mention of defendant's status as a leader in the field of marine engineering in the manner and with the frequency that plaintiff's counsel did." It seems clear that plaintiff could have demonstrated defendant's knowledge and expertise in a much less prejudicial (and perhaps an even more direct and effective) manner.

This court has said, in a diversity case governed by Ohio law, that "evidence as to the poverty or wealth of a party to an action is inadmissible in a negligence action." *Eisenhauer v. Burger*, 431 F.2d 833, 837 (6th Cir. 1970). "Appealing to the sympathy of jurors through references to financial disparity is improper." *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3rd Cir. 1978). The Third Circuit in *Draper* explained that:

The cumulative thrust of plaintiff's counsel's argument . . . was that because the defendants were rich (giants of the industrial world) and because the plaintiff was poor, the jury should base its verdict in favor of plaintiff on this financial disparity. But justice is not dependent upon the wealth or poverty of the parties and a jury should not be urged to predicate its verdict on a prejudice against bigness or wealth.

In *Draper*, plaintiff's counsel repeatedly referred to a $7 million contract between defendant Airco and U. S. Steel.

In Ohio, a "great number of cases . . . have condemned arguments of counsel contrasting the wealth and poverty or strength and weakness, of the opposing litigants, appealing to prejudice against a party to an action because it is a corporation, or corporation of a particular class . . . ." 53 Ohio Jur.2d Section 270, pp. 185–186. The Supreme Court of Ohio articulated the general rule in *Hudock v. Ry. Co.*, 164 Ohio St. 493, 498–499, 132 N.E.2d 108 (1956):

. . . in damage actions in which compensatory damages only are recoverable, evidence is not admissible, directly or indirectly, to show the wealth or financial standing of either the plaintiff or the defendant, except in those exceptional cases, such as actions for defamation or injury to reputation, where the position or wealth of the parties is necessarily involved in determining the damages sustained. It has ever been the theory of our government and a cardinal principle of our jurisprudence that the rich and poor stand alike in courts of justice and that neither the wealth of one nor the poverty of the other shall be permitted to affect the administration of law.

See *Book v. Erskine & Sons, Inc.*, 154 Ohio St. 391, 399–401, 96 N.E.2d 289, 293 (1951) (statements relating to the poverty of one of the parties or the wealth of the other "are clearly calculated to direct the jury's attention to the need of an injured party for compensation rather than the real issues in the case" and have been held to be prejudicial error).

Counsel for the City, as noted above, also made several comments, and asked several questions, which were intended to inform and emphasize that Kiewit had its corporate "residence in another state." *Smith v. Travelers Insurance Company*, 438 F.2d 373, 375 (6th Cir.) *cert. den.* 404 U.S. 832, 92 S.Ct. 79, 30 L.Ed.2d 62 (1971). Here, as in

*Smith*, "[T]he remarks were . . . obviously designed to prejudice the jurors. Taken alone the statements may well have been prejudicial." *Id.*

The other topic about which counsel for the City made improper and prejudicial references was insurance. Although it is true that it was counsel for Kiewit who first brought up the subject of insurance, the insurance to which he referred was the general public liability insurance policy required under the permit agreement with the City, which protected both Kiewit and the City from claims by third parties. The Court below correctly observed that this "mention of insurance was inevitable in the course of the trial by reason of the fact that matters of insurance coverage were included in the contracts between the parties." However, it was counsel for the plaintiff who interjected the subject of *another* insurance policy—one covering Kiewit in the instant litigation, and one under which Mr. Keenen was allegedly representing Kiewit at trial. See generally *Messinger v. Neipling*, 20 Ohio L.Abs. 610 (6th District Court of Appeals 1935). Counsel for plaintiff asked three times whether there was "insurance in this case right now," and whether "Mr. Keenen represents an insurance company." Thus, while mention of the contractually-mandated insurance may have been inevitable, it was prejudicial error for counsel for the City to inject into the trial the idea that Kiewit had insurance which would cover any damages the defendant would be obliged to pay. Indeed, "the impropriety of surreptitiously giving to the jury in negligence actions the idea that a verdict for the plaintiff will, in the last instance, fall upon a liability insurance company rather than upon the nominal defendant is widely recognized." 53 Ohio Jur.2d Section 270, p. 187. "Knowledge of defendant's insurance has traditionally been treated as fruit of the forbidden tree." *Stehura v. Short* (1974) 39 Ohio App.2d 68, 70, 315 N.E.2d 492. Without question, "a trial lawyer is treading on dangerous ground and always approaches grounds for a mistrial by the mere mention of insurance when same is not at issue." *White v. Standard Oil Co.*, 116 Ohio App. 212, 220, 187 N.E.2d 504, 509 (Court of Appeals for Marion County, 1962). See also *Vega, Admr. v. Evans*, 128 Ohio St. 535, 191 N.E. 757 (1934). This is not a case where disclosure of insurance was accidental, inadvertent, or an ambiguous or oblique reference, or incidentally interjected by a witness into an unresponsive answer. *Heuss v. Rockwell Standard Corp.*, 495 F.2d 1207, 1209–1210 (6th Cir. 1974); *Smith v. Boggia*, 200 F.2d 604, 605 (2nd Cir. 1952); *Gleaton v. Green*, 156 F.2d 459, 461 (4th Cir. 1946); *Vaughan v. Southern Bakeries Company*, 247 F.Supp. 782, 788 (D.S.C.1965). Instead, here, the subject of insurance coverage for defendant in this action was pointedly, unambiguously, repeatedly, and "deliberately brought out by counsel," *Smith, supra*, for the City. "The general principle that the voluntary or intentional introduction into evidence, either directly or indirectly, by the plaintiff of the fact that a defendant in a tort action is protected by liability insurance, is prejudicial error and grounds for a mistrial, is . . . well settled." *Gleaton, supra*. As the Court in *Radinsky v. Ellis*, 167 F.2d 745, 746 (D.C.Cir. 1948), stated:

> In a case such as this, when the existence of insurance protection in favor of the defendant is shown to the jury, a mistrial should be declared forthwith.

It is not necessary for this court to "rely on any of the individual instances or types of impropriety." *Draper, supra* at 97. This, as alluded to previously, was not a case of a single, isolated, or inadvertent comment. Rather, the improprieties permeated the entire trial, from opening statement through closing argument, in "a continuing pattern of misconduct." *Harris, supra* at 532. The remarks "were persistently made over the recurring and almost constant objection of counsel for the appellant," *Book, supra*, 154 Ohio St. at 397, 96 N.E.2d at 292, and were repeated even though Judge Green sustained the objections and admonished the jury. Indeed, plaintiff's counsel even persisted after the trial court explicitly reprimanded him for his misconduct. The cumulative effect of counsel's remarks undoubtedly served to

leave the intended, indelible impression upon the minds of the jurors.

Counsel's comments are even more significant when viewed in light of the close nature of this case. As the Supreme Court of Ohio was wisely cautioned, "in a case where the factual questions to be determined are so apparently in near equipoise the incidents of a trial which tend to arouse passion or prejudice should be closely scrutinized." *Book, supra* at 403, 96 N.E.2d at 295. In the case at bar, the factual question of causality is particularly troublesome, for there was no direct proof that Kiewit's actions in any way caused or contributed to the collapse of the dock. The collapses occurred on October 24, yet Kiewit had completed the slag loading operation on October 6 and had vacated the dock on October 8. Moreover, the portion that collapsed included only a small section of the area which had been leased to Kiewit; the major portion of the area that collapsed was not within the section which Kiewit had earlier occupied. In light of the age of Dock 34, it may very well have simply collapsed of its own weight. The doctrine of res ipsa loquitur certainly did not apply. Finally, Judge Green said that "defendant's arguments regarding plaintiff's knowledge and conduct are founded on evidence in the record and might be sufficient to convince the Court, as trier of fact, that plaintiff should not recover."

In light of the foregoing, the curative instructions which the trial court eventually chose to give were plainly, "not sufficient to remove the probability of prejudice." *Draper, supra* at 97. As the Fifth Circuit has so accurately observed:

> . . . the bench and bar are both aware that cautionary instructions are effective only up to a certain point. There must be a line drawn in any trial where, after repeated exposure of a jury to prejudicial information, . . . cautionary instructions will have little, if any, effect in eliminating the prejudicial harm. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309 (5th Cir. 1977).

Furthermore, the excessive size of the verdict demonstrates the prejudicial effect of counsel's comments. See *Hudock, supra*, 164 Ohio St. at 500, 132 N.E.2d 108; *Book, supra*, 154 Ohio St. at 404, 96 N.E.2d 289; *Cleve. Ry. Co. v. Crooks*, 130 Ohio St. 255, 257, 198 N.E. 867 (1935); *Gibbons v. B. & O. Rd. Co.*, 92 Ohio App. 87, 98, 109 N.E.2d 511 (Court of Appeals for Lucas County 1952). The jury awarded a verdict of $350,000 plus interest. Plaintiff's own expert witnesses estimated the cost of repair to be $310,000 or $470,000, respectively. Yet, when repaired, Dock 34, which had no useful commercial life as early as 1968, would have an estimated useful commercial life of fifty years. Thus, thanks to the jury's verdict, the City would, in effect, receive a new dock, something which the City did not have prior to the collapse. The trial court was "convinced that the verdict is grossly excessive", indicating "that the amount of the verdict may have been influenced in that regard by conduct of plaintiff's counsel," and so ordered a remittitur upon the verdict to $175,000. The Supreme Court of Ohio declared in *Hudock, supra*, 164 Ohio St. at 499, 132 N.E.2d at 112, that, "if the jury was influenced by this incompetent testimony appealing to its sympathy, the remittitur did not erase the prejudicial error." This Court is likewise of the opinion that the remittitur ordered below does not, and cannot, erase the prejudicial error deliberately injected by plaintiff's counsel. In *Draper, supra* . . . at 97, the Court explained:

> A jury which is prejudiced with respect to its finding of liability is not likely to be free from prejudice in awarding damages. Because there is a substantial probability that the error which affected the liability verdict also affected the determination of damages, the new trial must deal with both liability and damages.

This Court believes that the spillover of prejudice discussed in *Draper* may also occur in a case such as this: since the jury was prejudiced with respect to its award of damages, it cannot be said that its finding of liability was free from prejudice. Thus, on remand, "the new trial must deal with both liability and damages." It should be

noted that here, a new trial on liability may not create as many inconveniences as might otherwise occur, since the court below has already ordered a new trial on damages, which would very likely involve many of the same witnesses who would testify as to liability.

The record discloses that the District Court had infinite patience in conducting the trial and dealing with the flagrant misconduct of counsel for the City. It made every reasonable endeavor to provide a fair trial for Kiewit short of declaring a mistrial and punishing offending counsel for contempt, but it was to no avail because the misconduct was so pervasive that it made a lasting impression on the jury which was not erased, as is evidenced by the amount of the verdict, and the fact, as found by the court, that the jury did not follow its instructions on betterment.

"The remarks of counsel here . . . so far exceed the bounds of proper argument that we are bound to reverse the district court." *Draper, supra* at 94; see *Ayoub v. Spencer,* 550 F.2d 164, 170 (3rd Cir.), *cert. den.* 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). Since the prejudicial error here cannot be corrected by remittitur, this Court reverses and remands for a new trial on all issues.