Linda L. SIMPSON, Plaintiff,

v.

CITY OF MAPLE HEIGHTS, et al., Defendants.

No. C85–2491.

United States District Court, N.D. Ohio, E.D.

June 14, 1989.

See also 720 F.Supp. 1303.

Michael B. Michelson, Neal E. Shapero, Gaines & Stern, Cleveland, Ohio, for plaintiff.

Timothy T. Reid, Reid & Berry, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

Defendants Dennis Love and the City of Maple Heights have filed a Motion pursuant to Federal Rule of Civil Procedure 59 requesting this Court to set aside the verdict of December 7, 1988 and to grant a new trial on all issues. Plaintiff Linda Edmundson (Simpson) has filed a Motion for New Trial on the issue of damages as well as a Motion for Attorney's Fees and Costs.

At the close of the Defendants' case, this Court granted Plaintiff's Motion for a Directed Verdict on the issue of liability. The Court explained its decision to direct a verdict in favor of the Plaintiff on the issue of liability during its charge to the jury:

> After listening to all the evidence, I have concluded that there is but one conclusion which a reasonable jury could reach on the issue of whether the Maple Heights Police Department had in place and acted pursuant to an unconstitutional custom or policy regarding searches. The uncontroverted and repeated testimony of several employees of the Maple Heights Police Department overwhelmingly established that the department had in place at the time of this incident a policy that all female detainees regardless of the severity of the offense charged could be strip searched at the discretion of the arresting, booking or searching officer. No officer or matron directly involved in the searching of female detainees identified any serious criteria for determining when a strip search was deemed appropriate. This policy or custom of unfettered discretion which empowered the matrons to strip search any female detainee is clearly unconstitutional.
>
> As I mentioned earlier, in order to succeed on her claim against the City of Maple Heights, the plaintiff also has the burden of proving by a preponderance of the evidence that pursuant to this custom or policy the defendants' employees, agents, or servants deprived the plaintiff of her constitutional rights to be free from unreasonable searches.
>
> Once again, I am compelled by law to grant a directed verdict on this issue. In evaluating the propriety of a search alleged to have constituted an "unreasonable" search....law enforcement practice must be judged by balancing its intrusion on the individual's interests against its promotion of a legitimate government interest, taking into consideration all the circumstances surrounding the search. The factfinder must consider the manner in which the search is conducted, the justification for initiating it, the scope of the search and the place in which it is conducted, in making that determination.
>
> The evidence in this case overwhelmingly establishes that the plaintiff, Mrs. Linda Edmundson, was subjected to an unreasonable and, therefore, unconstitutional strip search. It is difficult for this court to imagine a greater intrusion upon the privacy interests of a citizen than a strip search such as the one performed on Mrs. Edmundson, and yet, the defendants have failed to offer any evidence tending to show that they had a reasonable suspicion that Mrs. Edmundson was either concealing contraband, carrying a weapon, or genuinely a risk to her own or other's safety. There was no prior arrest record which would support any justification for this search.
>
> Therefore, I have concluded that a reasonable jury could reach but one conclusion and that is that the strip search of Mrs. Edmundson was a violation of her constitutional rights. (Jury charge, pp. 14–16).

Defendants have failed to offer anything beyond mere conclusory argument to support their contention that the Court should set aside its directed verdict on the issue of liability (As of the date of this Order, the Defendants have failed to file a brief in support of their Motion despite this Court's granting of a 45 day enlargement of time for filing said brief.) As this Court noted in its charge to the jury, there was overwhelming uncontradicted evidence which warranted this Court's finding of liability. Thus, the portion of Defendant's Motion pertaining to the issue of liability is hereby denied.

Ironically, both parties' motions seek a new trial on the issue of damages. Although one can assume that each party was dissatisfied with the jury's damage award for different reasons, Defendants have made no effort to clarify the basis for their Motion. Plaintiff argues that a new trial on the issue of damages is required because defense counsel repeatedly introduced extraneous matters at trial which were clearly intended to prejudice the jury and resulted in an unreasonably low damage award. Federal Rule of Civil Procedure 59(a) provides:

"A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...."

In *Twachtman v. Connelly*, 106 F.2d 501, 508–9 (6th Cir.1939), the Sixth Circuit Court of Appeals held:

Counsel should not introduce extraneous matter before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside.

In *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir.1980), the Sixth Circuit reasserted the principles of *Twachtman* and held:

In determining whether "there is a reasonable probability that the verdict of a jury has been influenced" by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.

During the trial in question, Defense counsel attempted to minimize any potential damage award by demonstrating that the Plaintiff's physical and psychological injuries primarily stemmed from a history of abusive relationships rather than from the incident in question. Although Plaintiff has not objected to the Defendants' general strategy on damages, she contends that Defendants' counsel successfully, yet illegitimately, prejudiced the jury by creating negative impressions about the Plaintiff with "facts" they never sought to prove through the admission of evidence.

Specifically, Plaintiff has cited several instances in which Defense counsel allegedly created prejudicial impressions with "facts" not introduced as evidence. Most significant among these was a line of questioning during Defense counsels' cross-examination of the Plaintiff concerning an unrelated incident in which she was allegedly taken away in handcuffs by police after an argument with her husband:

Q: And did you describe to Dr. Williams in 1986 an incident that happened with, an argument with your husband where you described your mother called the police, and the police took her away in handcuffs?

A: No, not that I recall.

Q: Well, the information that Dr. Williams got, Willie Williams, did anybody else give him information other than what you told him?

A: I really don't know.

Q: Was there an incident that happened November 22, 1986, or shortly before when you and your husband had a fight and either you or he were taken away in handcuffs?

A: I don't recall.

Q: Did an incident ever happen where you were taken away in handcuffs either on November 22, 1986, or any other time as a result of a fight with your husband?

A: I don't recall.

(Tr. Edmundson at 76–77).

Defense counsel repeated this line of questioning during their cross-examination of Dr. Gary Kelley, Plaintiff's treating psychologist:

Q: Certainly, could you tell us under date of 11/22/86 the information that Dr. Williams has in his records as to the history that Miss Edmundson had given him?

A: It says other—I'm sorry—"her husband had beat her up. Then they got into an argument, into argument. Her mother called police. Police took her to jail in handcuffs.

(Tr. Kelley at 35.). This line of cross-examination questioning neither dealt with subject matter within the scope of the direct examination nor was it relevant to the credibility of the witnesses. In fact, it was highly prejudicial.

Similarly, Plaintiff contends that Defense counsel asked questions incorporating alleged statements from Dr. Williams' medical report which apparently were intended to create the impression that Plaintiff's attempts to seek mental health counseling from him were contrived efforts to enhance the damage award at trial.

Q: Now, when you saw the doctors that you saw later in 1987 and 1988, did you mention to one of those doctors that you needed to have some damage verification for this case?

A: I really don't understand the question.

Q: Did you say to Dr. Williams that your attorney told her that damages would be based on medical information?

A: What?

Q: Sure. On November 22, 1986, did you say to Dr. Williams that damages, if any, that you received would be based on medical evidence?

A: Not that I recall, no.

Defense counsel never called Dr. Williams as a witness, offered the alleged medical report into evidence, or made any attempt to offer any records or testimony to corroborate any of these facts.

Plaintiff also argues that Defendants' counsel made an irrelevant inquiry into Plaintiff's past employment record. Although this series of questions was initially permitted, the Court ultimately sustained an objection after Defendants' counsel failed to demonstrate how the Plaintiff's work record was relevant to this case. (Plaintiff was not seeking damages for lost wages.) The jury was then instructed to disregard all testimony regarding Plaintiff's work record.

At the close of the evidence, the Court was well aware of Defense counsel's possible transgressions during trial. The Court therefore instructed the jury accordingly:

Furthermore, during the course of argument and examination there have been numerous references by counsel to matters relating to other incidents affecting the plaintiff or her past employment. Some of the questions and arguments may have incorporated facts, or been related to matters that are not in evidence. It is the burden of counsel to support these facts or allegations with relevant evidence admitted during the course of the trial. I instruct you that any such allegations, arguments or areas of inquiry which are unsupported are to be completely disregarded. You are further instructed that you cannot draw any inferences, conclusions or attach any relevancy to or from, any facts, or allegations based upon facts, that were not established by relevant evidence. As I have repeatedly stated, counsel's statements, questions or comments are not evidence.

(Jury Charge, p. 4.)

This Court is confident that the references to Plaintiff's work record and her alleged statements about damage verification were placed in their proper light by the Jury Charge. Nevertheless, there is a reasonable probability that the jury's damage award was influenced by Defense counsels' totally irrelevant and highly prejudicial references to the alleged 1986 incident in which Plaintiff was supposedly hauled away to jail in handcuffs by police officers after an argument with her husband. These remarks placed the Court in a difficult "Catch–22" when it came time to charge the jury. Although the Court's general admonishment failed to dilute the powerful influence of these inflammatory comments, a more specific instruction directing the jury to ignore the handcuff incident would have simply heightened their impact. The Court was completely incapable of erasing this highly prejudicial image from the mind of each juror. This indelible image, illegitimately imprinted in

**1310**

the jurors' minds, damaged the fairness of this proceeding beyond repair.

This case involved a woman who was strip searched while in custody for a traffic violation. During the trial, her treating psychologist testified that it was his expert opinion that Plaintiff is suffering from post-traumatic stress disorder caused by the incident in question and that this condition is permanent. In their brief, Plaintiff's counsel reviewed the persistent physical manifestations of Plaintiff's emotional and psychological trauma which have resulted from this incident:

> vomiting (Tr. Edmundson at 34, 37, 38 & 39); severe headaches (Tr. Edmundson at 39, 55); severe abdominal distress including cramping and diarrhea (Tr. Edmundson at 39, 48, 56); inability to swallow properly (Tr. Edmundson at 41); disruption of sleep patterns and nightmares regarding the incident (Tr. Edmundson at 48, 58); appetite dysfunction (Tr. Edmundson at 43); persistent fatigue and ennui (Tr. Edmundson at 43); irritable bowel syndrome (Tr. Edmundson at 55); continuous reliving and re-experiencing the incident (Tr. Edmundson at 48, 58); anxiety (Tr. Edmundson at 40); depression (Tr. Edmundson at 40, 43); loss of self esteem, self worth, pride and dignity (Tr. Edmundson at 34, 49); fear of leaving home or being anywhere in the vicinity of the area where the incident occurred. (Tr. Edmundson at 40, 57); and a fear of police officers, uniforms and any authority figures. (Tr. Edmundson at 58, 40.).

The jury returned a damage award, however, amounting to only $21,500 for all injuries resulting from this unconstitutional strip search. This figure included compensation for $6,330 in special damages already incurred by the Plaintiff. This Court cannot ignore the impact that Defense counsels' improper conduct must have had on this outcome. There is *at least* a reasonable probability that the jury's damage award was influenced by these prejudicial references.

Plaintiff's Motion for New Trial on the issue of damages is hereby granted. The parties are hereby instructed to contact the Court within ten days to schedule a hearing on Plaintiff's Motion for Attorney's Fees and Costs and to set a date for a new trial on damages.

IT IS SO ORDERED.