James H. CLEMENS, Plaintiff–Appellant,

v.

**WHEELING & LAKE ERIE RAILROAD, Defendant–Appellee.**

**Nos. 02–4212, 02–4296.**

United States Court of Appeals, Sixth Circuit.

May 18, 2004.

Lawrence A. Katz, Coffey & Kaye, Bala Cynwyd, PA, for Plaintiff–Appellant.

William F. Gibson, Monica A. Sansalone, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Defendant–Appellee.

Before: GUY, GILMAN, and COOK, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

James H. Clemens, an employee of the Wheeling & Lake Erie Railroad, was injured while lifting a piece of equipment onto a locomotive engine. Clemens sued Wheeling under the Federal Employers' Liability Act, 45 U.S.C. § 51–60, alleging that his injury resulted from Wheeling's negligence. The jury returned a verdict in favor of Wheeling on the issue of liability. Clemens then filed a motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing that Wheeling's counsel had made prejudicial remarks during closing argument and that the district court had improperly admitted evidence of Wheeling's various safety awards. The district court denied Clemens's motion. For the reasons set forth

below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. The injury

On April 17, 1999, Clemens was injured while lifting a telemetry unit onto a locomotive engine. A telemetry unit, which weighs about 32 pounds, is a device that, according to a Wheeling representative, attaches to the rear end of a train and "tell[s] the crew on the head end of the train that the whole train is intact...." Despite Clemens's awareness of Wheeling's safety rules, which require employees to keep loads close to their bodies when lifting them, he attempted to swing the telemetry unit onto the engine with his arm extended at approximately a 90–degree angle to his body. The strain from lifting tore Clemens's right rotator cuff.

Clemens subsequently filled out an incident report and discussed the injury with his supervisor. In the report, Clemens stated that his "shoulder locked up." He did not state, either in the incident report or during the discussion with his supervisor, that his hand had slipped or that there was any grease or oil on the telemetry unit. The supervisor, moreover, personally inspected the unit and found no evidence of grease or oil.

Clemens went to a hospital emergency room the next day, where he received pain medication and was told to go to a doctor if the discomfort in his shoulder continued. In his conversations with the emergency room personnel, Clemens never claimed that his hand had slipped while he was lifting the unit. Several weeks later his shoulder pain had not improved, so he went to see Wheeling's company doctor, who referred him to Dr. Eugene Christian, an orthopedic surgeon. Dr. Christian eventually operated on Clemens's shoul-

der, but was unable to repair the tear. Clemens then received six months of physical therapy, which improved the range of motion and strength of his shoulder. Wheeling points out that "not in any of these medical records from the various visits to the hospital and doctors was it ever mentioned that there may have been grease on the telemetry unit ... or even that Clemens'[s] hand had slipped."

On May 3, 1999, Wheeling gathered information regarding Clemens's injury by conducting a hearing at which Clemens testified. No evidence was presented at the hearing suggesting that there was grease on the unit or that Clemens's hand had slipped.

### B. Defense counsel's statements during closing arguments

Wheeling asserts that "[t]he first reference to Plaintiff's hand slipping occurred on the eve of trial during the video testimony of Plaintiff's treating physician. Dr. Eugene Christian. The statement from Dr. Christian was totally unsupported by his own records or any other record." In its order denying Clemens's motion for a new trial, the district court agreed that "there was an arguable inconsistency [between] Dr. Christian's testimony and medical notes on the issue whether plaintiff's hand had slipped." The video deposition of Dr. Christian was the only evidence presented at trial corroborating Clemens's trial testimony that his hand had slipped and that he had discovered grease on one of his gloves after the incident.

During closing arguments, Wheeling's counsel pointed out the inconsistency between Dr. Christian's medical records and his video testimony, and suggested that Dr. Christian had the motivation to lie because he was concerned that Clemens would sue him for malpractice. Wheeling's counsel stated:

But consider this, Dr. Christian knows that he's testifying in a trial. That's why he's being deposed. He know that Mr. Clemens is suing his own employer because he tore his own rotator cuff. Do you think doctors have a worry about being sued? ... We're not criticizing [Dr. Christian]. We're saying what he did was within the standard of care. But that's not the standard of whether you get sued. You could file a lawsuit and you worry about it later or you make up the evidence as you go along, but that is not the standard of care for being sued. The standard for getting sued is whether someone wants to sue you.

Clemens contends that the suggestion that Dr. Christian had lied in order to avoid a malpractice suit "misstated the evidence," which defense counsel allegedly did in order "to trick and mislead the jury."

Wheeling's counsel made two other assertions during closing arguments that, Clemens contends, warrant a new trial. First, the attorney for Wheeling repeatedly stated that Clemens had brought the lawsuit out of a desire for money, and not for the truth. Wheeling's counsel also commented on the following exchange that occurred during the cross-examination of Wheeling's human resource manager by Clemens's counsel:

Q: It's also a fair statement that the fact that [Clemens has] been paid 40 hours a week to sit there and answer the phone from time to time and get paid 40 hours a week to do that [after he injured his rotator cuff], that certainly enables the railroad to come into court and say, well, we're going to do this for him in the future and therefore, he doesn't have any wage loss. That's certainly a possible scenario, correct?

...

A: Possible.

Q: I mean, that could be a litigation strategy, correct?

A: I guess that would be a possibility, but it's not reality.

During closing arguments, Wheeling's counsel commented on this line of questioning as follows:

But [Clemens's counsel] would come in and say, I am telling you as soon as this case is over, he's out of there.... We can't fire him. The fact is he has a job. He will continue to have a job. It is a full-time job and we have taken care of him from day one and to suggest that he is going to be fired right after with no evidence, with nothing but *sleazy accusations,* that is not evidence. That is not the truth.

(Emphasis added.)

Clemens specifically objected to defense counsel's statements about Dr. Christian and the alleged "sleazy accusations." At the end of closing arguments, he also voiced the general objection that defense counsel's closing argument was "inflammatory, improper and prejudicial." The district court overruled both objections.

## C. Evidence of Wheeling's safety record

Two witnesses testified during trial about safety awards that Wheeling had received. James Northcraft, Wheeling's vice president of transportation, testified that Wheeling had received several safety awards from two different railroad associations. Clemens objected to this testimony by Northcraft. But Clemens failed to object when James Hill, the railroad's superintendent of safety rules and training, testified as follows:

A: We received three Harriman Awards in 1993, '94 and '98. We received two American Shortline and Re-

gional Railroad association [awards] in '98 and '99.

Q: What is the significance of that?

A: They recognize the safety accomplishment of the railroads.

## II. ANALYSIS

### A. Standard of review

Clemens appeals the district court's denial of his motion for a new trial that he filed pursuant to Rule 59 of the Federal Rules of Civil Procedure. "[T]he grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing of an abuse of discretion. The district court abuses its discretion when we have a definite and firm conviction that the court committed a clear error of judgment." *LaPerriere v. International Union, United Auto., Aerospace and Agr. Implement Workers,* 348 F.3d 127, 132–33 (6th Cir. 2003).

### B. Statements made by Wheeling's counsel during closing argument

Clemens contends that a new trial is warranted because of allegedly improper comments made during closing argument by Wheeling's counsel. This court has long held that "the power to set aside [a] verdict for misconduct of counsel should be sparingly exercised on appeal." *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F.2d 749, 756 (6th Cir.1980) (quotation marks omitted). A new trial is not appropriate unless there is a "reasonable probability" that counsel's improper conduct influenced the jury's verdict. *Id.* In making this determination, "a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and

the court treated the comments, the strength of the case (e.g.[,] whether it is a close case), and the verdict itself." *Id.*

### 1. Defense counsel's assertion that Dr. Christian had a motive to lie during his deposition testimony

■ Clemens contends that defense counsel's assertion that Dr. Christian might have been concerned that Clemens would sue him for malpractice was not based upon any facts in the record or any reasonable inferences from the evidence. He cites two habeas corpus cases where this court stated that it is improper for a prosecutor to misstate the evidence. *See Macias v. Makowski,* 291 F.3d 447, 453 (6th Cir.2002) (holding that a prosecutor's statements based upon purported facts not in evidence was improper); *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir.2000) (acknowledging that a prosecutor may not inform a jury during closing argument of prejudicial facts not in evidence). Even in the context of a criminal case, however, a prosecutor is permitted to "argue reasonable inferences from the evidence." *Byrd,* 209 F.3d at 535 (quotation marks omitted).

The district court observed in the present case that "it was very clear [to the jury] that defense counsel's comments were speculative," and Clemens took the opportunity during his rebuttal argument to point out the speculative nature of those comments. Although the propriety of defense counsel's argument is questionable, the district court correctly noted that "the central fact remained that there was arguable inconsistency in Dr. Christian's testimony and medical notes on the issue whether plaintiff's hand had slipped." An inconsistency also existed between Clemens's prior accounts of the incident—where he never mentioned that his hand had slipped or that he found grease on his glove—and his trial testimony. In light of the weak evidence presented by Clemens regarding the possible negligence of

Wheeling, we conclude that there is no "reasonable probability" that defense counsel's patently speculative comments influenced the jury's verdict. *See Peter Kiewit Sons' Co.*, 624 F.2d at 756.

### 2. Defense counsel's argument regarding "sleazy accusations"

■ We must consider the frequency of the allegedly objectionable comments and "the manner in which the parties and the court treated the comments" in deciding whether a new trial is appropriate. *Id.* In the present case, Clemens's attorney objected after defense counsel accused him of making "sleazy accusations." The district court then told defense counsel: "Revise your statements. Be careful...."

Defense counsel made only one reference to "sleazy accusations" in his closing argument, and did not utter the phrase again after he was warned by the district court. The comment, moreover, concerned an issue of damages—Clemens's lost wages because of his injury. As the district court noted, the jury "found that [Wheeling] was not negligent and disposed of the case on liability never reaching the issue of damages." Defense counsel's isolated comment was therefore unlikely to have influenced the jury's verdict and, on balance, the speculative argument by Clemens's counsel about Wheeling's motivation in keeping Clemens employed seems roughly equivalent to defense counsel's own "sleazy accusation" about Dr. Christian's purported concern about being sued for malpractice. Under these circumstances, the district court did not abuse its discretion in declining to grant a new trial based upon defense counsel's comment.

### 3. Defense counsel's argument that Clemens's motivation for bringing the lawsuit was money and not the truth

■ Defense counsel repeatedly stated during closing argument that Clemens initiated the lawsuit out of a desire for money, and not for the truth. Although Clemens generally objected to defense counsel's closing argument, he failed to specifically object to these comments, and thus waived his right to appellate review on this issue. *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and (1) ... In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context....").

■ Even if Clemens had objected, however, we would still reject his argument on the merits. Although defense counsel's comments about Clemens's motivation for bringing the lawsuit were both frequent and irrelevant to the ultimate issue of negligence, any prejudicial impact from these comments is clearly outweighed by the fact that Clemens presented questionable evidence of negligence on the part of Wheeling. *See Peter Kiewit Sons' Co.*, 624 F.2d at 756 (holding that, in examining the impact of allegedly improper comments, a court must consider "their frequency [and] their possible relevancy to the real issues before the jury," and also "must examine ... the strength of the case (e.g.[,] whether it is a close case)"). In sum, there is no basis for us to "have a definite and firm conviction that the [district] court committed a clear error of judgment[,]" *LaPerriere*, 348 F.3d at 132–33, in deciding that defense counsel's comments did not warrant a new trial.

### C. Improper introduction of evidence regarding the railroad's safety awards

■ Clemens also contends that a new trial is warranted because the district

court erroneously allowed Wheeling's witnesses to testify about safety awards that the company had received. This court has held that "[e]ven if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the [exclusion or admission of the] evidence would have caused a different outcome at trial." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 514 (6th Cir. 1998).

Both James Northcraft, a Wheeling vice president, and James Hill, a Wheeling supervisor, testified about safety awards that the railroad had received. Clemens objected at trial to this testimony by Northcraft, but not by Hill. Wheeling therefore argues that Clemens has waived his right to appeal based upon Hill's testimony. According to Rule 103(a)(2) of the Federal Rules of Evidence, however, "[o]nce the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal." A substantial argument therefore exists that Clemens preserved his claim of error by objecting when the evidence of the safety awards was first introduced during Northcraft's testimony. Even assuming that Clemens has preserved this issue for appeal, however, he has failed to demonstrate that he was prejudiced by the admission of the evidence of the safety awards.

The ultimate issue in this case was whether Clemens's injury was caused by negligence on the part of Wheeling. As the district court noted, "during the course of this trial [Clemens] admitted that he violated safety rules," which raises an inference that the injury was caused by his own negligence. Clemens's testimony about his hand slipping because of grease on the telemetry unit, moreover, was suspect because neither Clemens nor Dr.

Christian mentioned that Clemens's hand had slipped until they testified for trial purposes more than two years after the accident. Therefore, although we tend to believe that the district court erred in admitting evidence of the safety awards, we are not persuaded that the jury would have entered a verdict for Clemens but for the admission of the evidence in question. The district court thus did not abuse its discretion in denying Clemens's motion for a new trial on this basis.

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.