822 F.2d 1088
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Mary H. ADAMS, Plaintiff-Appellant,
v.
Thomas E. CAMPSEY; Kim L. Thurston; William Eatherly; City
of Brentwood in Williamson County, Tennessee; Jane
Saxton; and Philip Saxton, Defendants-Appellees.
 No. 86-5772
 United States Court of Appeals, Sixth Circuit.
 July 9, 1987.
 
 Before KENNEDY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Mary H. Adams appeals the judgment of the district court entered upon a jury verdict in favor of defendants and the denial of her motion for new trial in this civil rights action brought under 42 U.S.C. Sec. 1983. Finding no reversible error, we affirm.
 
 I.
 
 2
 This action has its origin in a child custody dispute. The minor child is Beverly Jane Adams, the daughter of plaintiff's son, Walter Adams, and his former wife, defendant Jane Saxton. As of the summer of 1984, Beverly's custody was subject to an order of a North Carolina court providing that Beverly would be in her mother's custody from two days prior to the opening of school until two days after the close of the school year.
 
 
 3
 In August of 1984, while in the legal custody of her father, Beverly traveled with her paternal grandmother, plaintiff Mary H. Adams, along with her grandfather, from North Carolina to the home of plaintiff's daughter ('the Bahner home') in Brentwood, Tennessee, near Nashville. On August 22, 1984, defendants Philip and Jane Saxton appeared at the Brentwood Police Department and presented to defendant Officer Thomas Campsey a xerox copy of the North Carolina custody order. According to Campsey's trial testimony, the Saxtons informed him of their intention to obtain six-year-old Beverly and requested that he accompany them in order 'to keep the peace.' Campsey agreed, and the parties proceeded to the Bahner home, Campsey in his patrol car and the Saxtons in their personal car. While en route, Campsey communicated by radio with defendant Officer Thurston, requesting that Thurston serve as a 'back up.'
 
 
 4
 At the trial in the district court, the parties hotly contested the events at the Bahner home. In essence, plaintiff asserted that she was arrested by Thurston when she refused to allow defendants to enter the Bahner home. On the other hand, defendants contended that when Officer Thurston attempted to talk with plaintiff outside the Bahner home, plaintiff grabbed him, and plaintiff was then placed under arrest.
 
 
 5
 Plaintiff filed this action on November 30, 1984. In addition to Campsey, Thurston and the Saxtons, plaintiff named the City of Brentwood and Brentwood Police Officer William Eatherly as defendants. Plaintiff alleged that the police officers deprived her of her Fourth Amendment rights to be secure in her person and effects against unreasonable searches and seizures and her Fourteenth Amendment right not to be deprived of life, liberty or property without due process of law, and to the equal protection of the laws. Plaintiff further alleged state law claims against the defendant police officers for false imprisonment and assault and battery. Finally, plaintiff alleged 'that the acts of the defendants Jane Saxton and Philip Saxton were committed in conspiracy with the defendant police officers with an intent on the part of the defendant Saxtons to deprive plaintiff of her rights as alleged herein by means of coordination with and assistance of the color and title of law as embodied by the defendant police officers.'
 
 
 6
 Trial was held during early April 1986. At the close of plaintiff's proof, the district court directed a verdict in favor of all defendants on plaintiff's claim that defendants conspired to deprive plaintiff of her constitutional rights. The court concluded there was no evidence that plaintiff was the object of any concerted activity by the Saxtons and the officers, noting that no evidence suggested that defendants were even aware of plaintiff's existence prior to their arrival on the scene. Because the conspiracy allegation was the only predicate for liability against the Saxtons, the action against them was dismissed. The district court also directed a verdict in favor of defendant Eatherly on plaintiff's sole allegation against him, false imprisonment, because the evidence was uncontradicted that he played no role in her arrest.
 
 
 7
 The court took under advisement a motion on behalf of defendants Campsey and Thurston for a directed verdict on the section 1983 claim as to the defense of qualified immunity and allowed the case to go to the jury only as to them. The jury thereafter returned its verdict answering all of the liability questions on the verdict form in favor of defendants. Plaintiff's motion for a new trial was denied, and this appeal followed.
 
 II.
 
 8
 Plaintiff first argues the district court erred in excluding the testimony of Larry Habegger, Walter Adams' North Carolina attorney. Habegger initially testified that he was counsel of record for Walter Adams in a pending case in North Carolina regarding the custody of Beverly. Habegger testified that at the time of plaintiff's arrest, Beverly's custody was governed by a custody order entered on June 14, 1982. Pursuant to that custody order, Beverly was to be returned to Mrs. Saxton two days prior to the start of school in the fall of 1984. Defense counsel then objected, on the grounds of relevancy, to plaintiff's counsel's inquiry as to what Habegger had done to seek modification of the custody order, as of August 22, 1984. Plaintiff's counsel argued that he wished to offer testimony from Habegger as to his instructions to Walter Adams about returning the child.
 
 
 9
 Observing that Walter was not a party to the action, the district court sustained defendants' objection, allowing plaintiff to make a proffer of proof outside the presence of the jury. In the proffer, Habegger testified that in August of 1984, he filed a motion in the North Carolina court to modify the custodial arrangement for Beverly. The North Carolina judge set a hearing date for the motion, following which Habegger notified Mr. and Mrs. Saxton of the hearing date (the Saxtons were not at that time represented by counsel). Thereafter, Attorney John Morrow contacted Habegger and informed him he represented the Saxtons and asked Habegger whether he had any objections to having the hearing moved up prior to the opening of school. Habegger had no objection, and the hearing was scheduled for August 23.
 
 
 10
 According to Habegger, the purpose of the hearing was to determine whether Beverly would return to the state of Indiana (the Saxtons' residence) to attend school, or remain in the state of North Carolina pending disposition of a full hearing on the merits of her custody. Beverly was to testify at that hearing. Habegger further testified that he told Walter to have Beverly present in court on August 23.
 
 
 11
 Plaintiff argues the exclusion of Habegger's testimony prejudiced her in the presentation of her case because she was unable to rebut defense counsel's argument to the jury that plaintiff was hiding Beverly out in Tennessee in an attempt to avoid the North Carolina custody proceedings. Plaintiff asserts that Habegger's testimony was critical to the jury's assessment of her credibility.
 
 
 12
 At the outset, we observe that the district court was on firm ground in finding Habegger's proffered testimony irrelevant to the substantive issues of the trial. "Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Fed. R. Evid. 401. 'The exclusion of evidence on the grounds of relevancy is within the discretion of the trial court.' McLaurin v. Fischer, 768 F.2d 98, 104 (6th Cir. 1985). The 'fact' that is at issue here in why Beverly was in Brentwood with her grandmother. This 'fact' is in no way material to the case; i.e., it has no consequence to the determination of the action. The case basically turned on whether plaintiff was arrested for refusing the officers entry into the house or for striking Officer Thurston. The reason for Beverly's presence in Brentwood is simply not material to the case.
 
 
 13
 As noted, plaintiff argues that this evidence went to her credibility. However, plaintiff testified that she had no knowledge of Habegger's activities in the North Carolina proceedings. Accordingly, we conclude the district court did not abuse its discretion in excluding Habegger's testimony.
 
 
 14
 In the alternative, plaintiff argues that the district court committed plain error in allowing defense counsel to argue to the jury that plaintiff had an improper motive in bringing Beverly to Tennessee. As noted, the gist of the offending argument was defense counsel's assertion that 'what was going on' was that plaintiff was 'hiding out' Beverly and ignoring the North Carolina order.
 
 
 15
 In City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749 (6th Cir. 1980), we set forth the following standards for reviewing a claim of attorney misconduct:
 
 
 16
 This Court agrees that 'the determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court.' . . . Indeed, 'whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination.' . . . 'The trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial . . . The trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.' . . . It is for this reason that this Court has declared that 'the power to set aside verdict for misconduct of counsel should be sparingly exercised on appeal.' . . . Yet, although appellate courts 'are always reluctant to grant a mistrial because of counsel's prejudicial statements when the (trial) court has declined to do so,' . . . it is nevertheless clear that 'counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects, and, where there is a reasonable probability that the verdict of a jury has been influenced by such conduct, it should be set aside.'
 
 
 17
 In determining whether 'there is a reasonable probability that the verdict of a jury has been influenced' by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself.
 
 
 18
 Id. at 756 (citations omitted).
 
 
 19
 As plaintiff concedes, her failure to object to counsel's argument necessitates that she demonstrate plain error. See Fed. R. Evid. 103. 'The plain error doctrine is to be used 'only in exceptional circumstances' and only where the error is so plain that 'the trial judge . . . [was] derelict in countenancing it." United States v. Mendez-Ortiz, 810 F.2d 76, 78 (6th Cir. 1986) (quoting United States v. Hook, 781 F.2d 1166, 1172 (6th Cir.), cert. denied, 107 S. Ct. 269 (1986)), cert. denied, 107 S. Ct. 1384 (1987).
 
 
 20
 In our view, the district court did not commit plain error in failing to sua sponte exclude defense counsel's argument. The record contained evidence that pursuant to the custody decree, the child's father's custody was to end two days before the opening of the school year, that the school year began on August 23, 1984, and that the incident at issue occurred on August 22, 1984. Plaintiff testified that she knew Beverly was originally to leave Brentwood on August 18 because Beverly was to return to Indiana to start school. Plaintiff further testified that when the officers arrived she 'told the children to go into the house and lock the door and not to open it' and that at the time there was some discussion of a 'court order.' Officer Thurston testified that plaintiff was hysterical, screaming: 'You are not getting that child, you are not getting that child.' Thus, the argument may well have been justified by the proof.
 
 
 21
 Nevertheless, counsel's comments were arguably improper because, as noted earlier, the reason for Beverly's presence in Tennessee was not material to the matters at issue in the trial. Even if she were 'hiding out' Beverly in Brentwood, plaintiff was entitled nonetheless to recover against defendants if she was arrested for refusing the officers entry into the Bahner home, which defendant Campsey conceded they had no right to do. Accordingly, it is arguable that defense counsel introduced 'extraneous matters' and 'endeavor[ed] to bring before [the jury] unrelated subjects.' Peter Kiewit Sons', supra, 624 F.2d 756.
 
 
 22
 Defendants respond that their counsel's argument was material in that it tended to explain why plaintiff reacted so vehemently to the defendants' arrival at the Bahner home. We find it unnecessary to definitively categorize the propriety of counsel's argument, however, because in our view the district court was not 'derelict in countenancing it.' As noted, the district court's discretion in determining the permissible limits of counsel's argument is very broad. Given the breadth of this discretion and considering the nature of the offending argument, we do not believe the facts of this case present 'exceptional circumstances' justifying a finding of plain error. In light of the fact that defense counsel's argument was supported by the record and that a reference to a party's motives is often not inappropriate, we cannot say the error, if any, was so obvious that the district court was 'derelict in countenancing it.'[1]
 
 
 23
 Plaintiff's final argument is that 'the trial court erred in dismissing the defendant Saxtons where the record was replete with evidence that they acted under color of law, in joint activity with the defendant officers.' Plaintiff's argument is based on her assertion that although the Saxtons were private citizens, the facts demonstrated that they were acting 'under color of law' for purposes of section 1983 because the Saxtons were jointly engaged with the state officials.
 
 
 24
 Plaintiff has misapprehended the basis for the district court's dismissal of the Saxtons. The district court did not hold that the Saxtons were not acting under color of state law for purposes of section 1983. Rather, the district court held that, construing the evidence in the light most favorable to plaintiff, reasonable minds could reach but one conclusion; viz., plaintiff was not the object of any concerted actions on the part of the Saxtons and the defendant police officers:
 
 
 25
 There is nothing to suggest that her existence was known, that she was the object of any conspiracy, that there was any intention to violate her rights under the Constitution of the United States, that her very existence wasn't even contemplated. The object of the exercise was to obtain the custody of that child.
 
 
 26
 Joint Appendix at 349.
 
 
 27
 As the district court observed, plaintiff's entire claim against the Saxtons, as set forth in the pretrial order, was as follows:
 
 
 28
 Plaintiff further alleges that the acts of the defendants Jane Saxton and Philip Saxton were committed in conspiracy with the defendant police officers with an intent on the part of the defendant Saxtons to deprive plaintiff of her rights as alleged herein by means of coordination with and assistance of the color and title of law as embodied by the defendant police officers.
 
 
 29
 Joint Appendix at 40.
 
 
 30
 Thus, having concluded that there was no evidence that the plaintiff was the object of any concerted actions on the part of the Saxtons and the officers, that there was no evidence to suggest that she was the object of any conspiracy, and that there was no evidence of any intent on the part of the Saxtons to violate plaintiff's rights under the federal constitution, the district court properly dismissed the Saxtons. However, the dismissal was not based on a finding that the Saxtons were not acting under color of state law, but rather on the court's conclusion that plaintiff presented no evidence in support of her only substantive claim against the Saxtons; viz., that the Saxtons conspired with the police officers with the intent to deprive plaintiff of her constitutional rights. Accordingly, plaintiff has failed to meet her burden of demonstrating that the dismissal of the Saxtons was erroneous.
 
 III.
 
 31
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 In support of her position, plaintiff relies on Rojas v. Richardson, 703 F.2d 186 (5th Cir. 1983), where the district court was found to have committed plain error in allowing defense counsel to refer to plaintiff's status as an illegal alien. However, on rehearing, the panel vacated its decision and affirmed the district court because the supplemental record revealed that the jury was aware throughout the trial of plaintiff's legal status. See Rojas v. Richardson, 713 F.2d 116 (5th Cir. 1983). Accordingly, Rojas is of no benefit to plaintiff