**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PATRICIA ANN PRICHARD; RONALD F.
PRICHARD,

        *Plaintiffs-Appellees,*

        v.

JANE A. KURUCZ, M.D.,
INCORPORATED,

        *Defendant-Appellant.*

No. 01-1328

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(CA-98-54-3)

Argued: September 25, 2001

Decided: November 6, 2001

Before WILKINSON, Chief Judge, and WILKINS and
TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** C. Benjamin Salango, FLAHERTY, SENSABAUGH &
BONASSO, P.L.L.C., Charleston, West Virginia, for Appellant.
David L. White, MASTERS & TAYLOR, Charleston, West Virginia,
for Appellees. **ON BRIEF:** Amy Martin Herrenkohl, HER-
RENKOHL LAW OFFICE, Barboursville, West Virginia, for Appel-
lees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Jane A. Kurucz, M.D., Inc. appeals the denial of several post-trial motions seeking to overturn a malpractice verdict in favor of her former patient, Patricia Ann Prichard, and Patricia's husband, Ronald F. Prichard. Finding no error, we affirm.[1]

I.

In 1996, a mammogram of Patricia Prichard's left breast ("First Mammogram") showed a suspicious cluster of calcium deposits known as microcalcifications. Because such clusters may indicate cancer, Prichard's doctor recommended a biopsy for diagnostic purposes. Prichard was ultimately referred to Kurucz, a surgeon, who performed a stereotactic biopsy, a procedure involving the use of a computer-guided needle to remove a tissue sample for analysis by a pathologist. When the pathologist found cancer in the samples removed by Kurucz, Prichard opted to have a lumpectomy.[2] There is essentially no dispute that Kurucz's actions up to this point satisfied the applicable standard of care.

Kurucz operated on Prichard on April 26, 1996 ("First Lumpectomy"). Because neither the microcalcifications detected in Prichard's

---

[1]The Prichards' cross-appeal, contending that West Virginia's cap on non-economic damages is unconstitutional, was dismissed by agreement of the parties.

[2]We use the term "lumpectomy" to refer to any operation involving the excision of a limited amount of breast material (in contrast to a mastectomy, which involves the removal of an entire breast). According to the evidence at trial, this is the common understanding of the term "lumpectomy," although some physicians define the term more narrowly or do not use the term at all.

breast nor the cancer itself could be observed by sight or touch, Kurucz needed some guide in order to find the affected tissue. The Prichards allege in this suit that the guides employed by Kurucz were deficient in two respects.

First, the Prichards allege that Kurucz used an inadequate method of locating the microcalcifications *during* the surgery. Kurucz followed the needle track left by the biopsy; she testified that the area where she had inserted the stereotactic needle "looked and felt different from the surrounding breast tissue," J.A. 995, as the result of a phenomenon called "induration." According to the Prichards, however, the standard of care requires the use of a hookwire. This device, which consists of a fine wire with a small hook at the end, is inserted shortly before surgery by a radiologist, who uses mammography to confirm that the device is in the proper location. The hook ensures that the device remains in place until removed by the surgeon.

Second, the Prichards allege that Kurucz was negligent *after* the surgery in relying on a pathologist's analysis of a portion of the excised tissue. The pathologist found no cancerous cells in the areas he examined. The Prichards assert that Kurucz should have supplemented this analysis with a specimen radiograph, an X-ray of the entire sample that would have shown whether the "lump" removed during surgery contained the targeted microcalcifications. The Prichards further allege that Kurucz misinterpreted the pathologist's finding that the excised tissue contained no cancer; Kurucz construed this finding to indicate that all the cancerous growths were removed during the biopsy (before the First Lumpectomy was performed), but the Prichards contend that the negative finding demonstrated that Kurucz missed the affected tissue during the lumpectomy.

The parties agree that, whether or not Kurucz's practices met the standard of care, Prichard should have undergone radiation treatment following the First Lumpectomy. She did not do so. Prichard and Kurucz offered conflicting testimony about whether Kurucz clearly explained the need for such treatment.

Within the next year, Prichard had another suspicious mammogram ("Second Mammogram") and another lumpectomy ("Second Lumpectomy"). The surgeon who performed the Second Lumpectomy deter-

mined that the cancer was sufficiently advanced that Prichard needed to have her entire left breast removed. At trial, the Prichards' experts opined that the cancer observed in the Second Mammogram and during the Second Lumpectomy was the same cancer that was targeted, but not removed, during the First Lumpectomy. In contrast, Kurucz's expert witnesses testified that Kurucz properly removed all the micro-calcifications that were evident at the time of the First Mammogram but that new cancer then developed in the same area, in part due to Patricia Prichard's failure to undergo radiation following the First Lumpectomy.

The Prichards filed a negligence suit against Kurucz in 1998. Kurucz denied any negligence and also asserted that Prichard was comparatively negligent in refusing to undergo radiation. The case was tried twice; the first trial ended in a hung jury, but the second resulted in a verdict in the Prichards' favor on all questions.

## II.

Kurucz contends that the district court erred in denying her motion for a new trial, which alleged, *inter alia*, that (a) the Prichards' attorneys engaged in extensive misconduct, (b) the comparative negligence verdict was against the weight of the evidence, and (c) the court erroneously admitted a radiologist's opinion regarding the standard of care for surgeons. Kurucz further asserts that she was entitled to judgment as a matter of law on the question of whether the failure to use a hookwire during the First Lumpectomy breached the standard of care. Finally, Kurucz claims that the cumulative effect of these errors resulted in sufficient prejudice to necessitate a new trial. We review the denial of Kurucz's new trial motion for abuse of discretion, and we review de novo the denial of judgment as a matter of law. *See Rhoads v. FDIC*, 257 F.3d 373, 381 (4th Cir. 2001).

## A.

We first address Kurucz's allegations of misconduct by the Prichards' attorneys. A new trial is required on the basis of attorney misconduct only when a miscarriage of justice would otherwise result. *See Gearin v. Wal-Mart Stores, Inc.*, 53 F.3d 216, 219 (8th Cir. 1995) (per curiam). Moreover, in reviewing a claim of this nature, we are

mindful that the district court is in the best position to assess the prejudice caused by counsel's misconduct. *See id.* We conclude that the determinations made by the district court here were not erroneous.

Kurucz's primary allegation of misconduct relates to the Prichards' attorneys' repeated references to Kurucz's failure to communicate with Patricia Prichard's gynecologist. At both trials, the district court refused to admit evidence that Kurucz breached the standard of care through inadequate communication with other doctors. Nevertheless, at the second trial (from which this appeal was taken), the Prichards' attorneys made several references to this issue. For example, counsel asked one of the Prichards' experts about record-keeping by doctors, and then asked a question about whom certain information would be shared with. In an ensuing bench conference, the district court reminded counsel:

> I'm not going to let you elicit testimony saying there's a standard of care for doctors to send records to referring physicians. And that's certainly the implication, if not the sole purpose, of asking him these questions.

J.A. 1186.

We do not agree with Kurucz that these incidents warrant a new trial. Twice during the trial, and again in closing instructions, the district court advised the jury that the extent of Kurucz's communication with other doctors was not at issue and could not form the basis for a verdict in favor of the Prichards. Jurors are ordinarily presumed to obey curative instructions. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 501 (4th Cir. 2001). Furthermore, the court expressly found that these instructions sufficed to protect Kurucz against prejudice from counsel's improper comments. We defer to this assessment because the district court is in the best position to gauge the effects of an attorney's improper remarks and of its own remedial efforts. *See id.*; *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980).

We reach a similar conclusion regarding Kurucz's other allegations of misconduct. According to Kurucz, the Prichards' attorneys improperly commented on Kurucz's failure to bring in a pathologist as an

expert witness, discussed a witness' testimony with the witness during an overnight recess, advanced a theory of recovery based on lack of informed consent, and elicited an opinion on the standard of care from a witness not offered for that purpose. Having considered the record, the briefs, and the applicable law, and having had the benefit of oral argument, we see no reason to overturn the rulings of the district court on these issues.

B.

We next consider Kurucz's assertion that the determination of the jury regarding comparative negligence was against the clear weight of the evidence. Having failed to satisfy the jury with her evidence on this issue, and having then failed to persuade the district court to over-turn the verdict, Kurucz now faces the substantial burden of convinc-ing us to forgo our usual deference to both the jury and the district court. *See Conner v. Schrader Bridgeport Int'l, Inc.*, 227 F.3d 179, 200-01 (4th Cir. 2000) (noting that grant or denial of new trial based on weight of evidence is reviewed for abuse of discretion but that even district court should not infringe on prerogative of jury to resolve credibility issues).

Kurucz has not carried this burden. Kurucz asserted in the district court that Patricia Prichard was negligent in failing to undergo radia-tion treatment after the First Lumpectomy. As Kurucz correctly notes, her records contain ample evidence that Prichard was given informa-tion about the advisability of radiation treatment. There was also evi-dence, however, that Kurucz told both Prichard and her daughter that the surgery was so successful that no further treatment would be required. As we have no basis for discrediting that testimony, we uphold the determination by the district court that the verdict regard-ing comparative negligence was not against the clear weight of the evidence.

C.

Kurucz next faults the district court for denying a new trial based on the admission of testimony by a radiologist, Dr. Tearle L. Meyer, regarding the standard of care for surgical removal of non-palpable calcifications. Meyer testified that Kurucz violated the standard of

care by failing to use a hookwire in the First Lumpectomy and by failing to obtain a specimen radiograph following the operation. Although Meyer stated at his deposition that he did not consider himself an expert in surgery, this self-assessment was not binding on the court. Moreover, our review of Meyer's testimony persuades us that the district court did not abuse its discretion in concluding that Meyer was sufficiently familiar with the relevant practices of surgeons to testify about the standard of care for lumpectomies. *See Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159-60 (4th Cir. 1986) (stating that proffered expert was qualified based on education and knowledge, notwithstanding her lack of relevant experience); *see also Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (noting the broad leeway enjoyed by district courts in evaluating the qualifications of experts).

D.

Kurucz asserts that she was entitled to judgment as a matter of law on the question of whether she violated the standard of care by failing to use a hookwire during the First Lumpectomy. Kurucz contends that Meyer's testimony on this issue (which we have just held was admissible) does not preclude the entry of judgment in her favor because Meyer's position was contradicted by Dr. Phillip Breen, another expert presented by the Prichards. The district court found that Meyer's and Breen's opinions were not sufficiently inconsistent to compel judgment as a matter of law against the Prichards. We affirm on a different rationale.

Kurucz's argument is premised on the segregation of the larger issue of Kurucz's negligence into narrow questions regarding particular methods: First, would a reasonable surgeon performing a lumpectomy use a hookwire to locate targeted microcalcifications? Second, would a reasonable surgeon request specimen radiography to determine whether the tissue excised in a lumpectomy contained the targeted microcalcifications? We do not share this view of the case. At the heart of this case was an allegation that Kurucz was negligent by failing to use *any* method, including a hookwire or a specimen radiograph, to ensure that the microcalcifications observed in the First Mammogram were no longer present following the First Lumpectomy. Consistent with this theory of the case, the verdict form used

by the jury posed a single question relating to Kurucz's duty to adhere to the standard of care:

> Do you find by a preponderance of the evidence that Jane A. Kurucz, M.D. violated the applicable standard of care for a general surgeon in the same or similar circumstances in the manner in which she performed surgery on Patricia Prichard on April 26, 1996?

J.A. 1587. Because the hookwire issue was not severable from the rest of the case, Kurucz was not entitled to judgment as a matter of law on this issue.[3]

### E.

Finally, Kurucz invokes the doctrine of "cumulative error," under which reversal may be required due to the aggregate effect of errors that, taken individually, would be deemed harmless. Having found no error by the district court, we must reject this argument. *See SEC v. Infinity Group Co.*, 212 F.3d 180, 196 (3d Cir. 2000), *cert. denied*, 121 S. Ct. 1228 (2001). Moreover, to the extent that this claim is predicated on the misconduct of the Prichards' attorneys rather than the rulings of the district court, we again find no basis for reversal, as the district court adequately examined the cumulative impact of counsel's improper acts.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

---

[3]In light of this decision, we do not decide whether there are any circumstances in which a defendant would be entitled to judgment as a matter of law based on conflicting testimony by the plaintiff's experts.