GIBBONS, APPELLEE, *v.* BALTIMORE & OHIO RD. CO. ET AL., APPELLANTS.

88

(No. 4585—Decided March 3, 1952.)

*Messrs. Taylor, Cruey & Kelb* and *Messrs. Bryce & Duffey,* for appellee.
*Mr. Joel S. Rhinefort,* for appellants.

FESS, J. This cause is here on appeal on questions of law from a judgment entered upon a verdict for plaintiff in the sum of $75,000. The action was brought by the plaintiff against the defendant railroads to recover for personal injuries sustained in a collision between an automobile in which plaintiff was riding as a passenger and a train operated by the defendants. The collision occurred about 1 a. m. on August 17, 1946, at the intersection of Phillips avenue and The New York Central Railroad tracks in Toledo, Ohio. The grounds of negligence upon which the case was tried were:

1. In operating said train while approaching said crossing at an excessive, dangerous and unlawful rate of speed, to wit, more than sixty miles an hour.

2. In failing to lower the crossing gates upon the approach of said train in time to warn the plaintiff and the driver of said automobile of the approach of said train, so that said driver would have refrained from or have been prevented from driving said automobile upon said crossing and being struck by said train.

Separate motions to strike the allegations from the petition were overruled and in their answers the defendants, after certain admissions, denied negligence and pleaded contributory negligence.

While, under normal circumstances, there is little or no restriction with respect to the speed of a railroad train in the open country (*Cleveland, C., C. & I. Ry. Co.* v. *Schneider,* 45 Ohio St., 678, 694, 17 N. E., 321; *New York, Chicago & St. Louis Rd. Co.* v. *Kistler,* 66 Ohio St., 326, 64 N. E., 130), within a municipality or populous area the speed must be such as is com-

mensurate with the exercise of ordinary care to prevent harm, and, with respect to one approaching a grade-crossing within a municipality, the degree of care depends upon the nature of the surrounding area, the volume of traffic at the crossing, and other circumstances bearing upon the subject. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kuhl, Admx.*, 123 Ohio St., 552, 176 N. E., 222; *New York, Chicago & St. Louis Rd. Co.* v. *Van Dorp*, 36 Ohio App., 530, 173 N. E., 445; *Croke* v. *Chesapeake & Ohio Ry. Co.*, 86 Ohio App., 483, 93 N. E. (2d), 311.

The use of the word, "unlawful," in the allegation, although improper and subject to a motion to strike, is not to be construed as importing violation of a statute but rather as meaning contrary to normal or conventional procedure—in other words, "negligent."

With respect to lowering of gates, the defendants recognized the crossing in question as dangerous to the traveling public and very properly adopted adequate equipment for the protection of the public. Cf. *Cleveland, C., C. & I. Ry. Co.* v. *Schneider, supra.* No question is presented as to the adequacy of the protective measures or that additional precautions should have been provided. The negligence charged is the failure to exercise ordinary care in the use of the facilities. The motions to strike the allegations of negligence were properly overruled and the assignments of error with regard thereto are not sustained.

Error is assigned also regarding the admission of evidence showing the character of the neighborhood of the crossing and obstructions along the tracks. Although a railroad ordinarily is not responsible for structures off its right of way which may obstruct the view, nevertheless, the degree of care to be exercised is determined by the danger to be apprehended

when a crossing is in a populous community and when structures maintained near the tracks obscure the view of approaching trains. *Weaver* v. *Columbus, Shawnee & Hocking Ry. Co.*, 76 Ohio St., 164, 81 N. E., 180; *Loos* v. *Wheeling & Lake Erie Ry. Co.*, 60 Ohio App., 527, 533, 22 N. E. (2d), 217; *Icsman, Admr.*, v. *New York Central Rd. Co.*, 85 Ohio App., 47, 87 N. E. (2d), 829. The cited cases relate primarily to the issue of additional warning precautions at a crossing rather than to the issue of speed. Since adequate precautionary measures were employed at the crossing in the instant case, the evidence relating to the surrounding area was immaterial on any issue with respect to the nature of the crossing and the protection provided, but such evidence was admissible on the issue of the speed of the train. Furthermore, the plaintiff was charged with contributory negligence and, while introduced somewhat out of order, the evidence was also admissible upon the issue of exercise of ordinary care on the part of the plaintiff himself. At the conclusion of plaintiff's case, plaintiff sought leave to amend by alleging that the view of one approaching the crossing was obstructed by structures maintained on the right of way and that the crossing was thereby rendered extraordinarily dangerous. Such request was properly denied since the hazardous nature of the crossing was immaterial in the absence of a claim that adequate precautions were not provided.

Over objection, testimony on behalf of the plaintiff was admitted tending to show that the bell on the engine was not ringing and that the whistle was not blown. There was no allegation of negligence with respect to these items and it was error to admit such testimony. The evidence was positively and emphatically rebutted by a number of defense witnesses. At the conclusion of the trial, upon defendants' special request,

the jury was instructed not to consider any evidence as to the blowing of the whistle or the sounding of the bell on the train. If, during the presentation of his own case, the plaintiff offers evidence to support a ground of recovery substantially different from that set forth in the petition, and the same is objected to as incompetent because of variance from the allegations of the petition, proper practice requires that such evidence shall be excluded until the plaintiff has amended his petition and an issue is made up respecting the new matter incorporated in such amendment. *Hilsinger* v. *Trickett,* 86 Ohio St., 286, 99 N. E., 305, Ann. Cas. 1913D, 421; *Groves* v. *Freedom Oil Works Co.,* 60 Ohio App., 376, 21 N. E. (2d), 599. But in *Klein* v. *Thompson,* 19 Ohio St., 569, 571, the Supreme Court stated:

"In this state we do not regard the admission of improper evidence to the jury, which is afterwards ruled out, as of itself constituting ground for reversal."

See, also, *Friedl* v. *Lackman,* 136 Ohio St., 110, 23 N. E. (2d), 950. Giving due regard to the substantial justice statute (Section 11364, General Code), the evidence must be of such a character that its sting and effect would still remain notwithstanding its later exclusion by the court, as, for example, the admission of evidence of liability insurance. Cf. *Wilson* v. *Wesler, Admx.,* 27 Ohio App., 386, 160 N. E., 863.

How far an instruction excluding inadmissible testimony will, with ordinary jurors, affect their minds by removing therefrom the impression they may have received from the testimony, is problematical, but in the absence of a showing to the contrary the jury is presumed to have followed the court's instructions. To hold otherwise would lead to holding that erroneous instructions on the law are nonprejudicial. As

hereinafter indicated, there was sufficient proper evidence before the jury upon the issue relating to the lowering of the gates to support a finding of negligence, and in the absence of interrogatories testing the general verdict it can not be said that the admission of the testimony with respect to bell and whistle, although erroneous, was prejudicial.

Over objection, a brother-in-law of the driver of the automobile (who died as a result of the collision) was permitted to testify as to the volume of vehicular traffic over the crossing and to facts indicating that the driver was familiar with the crossing. In their answer, the defendants raised the issue of the driver's negligence. Apparently it is now proper to introduce evidence of a third party's negligence. *Schreiber* v. *National Smelting Co.,* 157 Ohio St., 1, 104 N. E. (2d), 4. As above indicated, evidence of the volume of traffic had some, although possibly remote, bearing on the speed of the train. In the third paragraph of the syllabus of *Tanzi* v. *New York Central Rd. Co.,* 155 Ohio St., 149, 98 N. E. (2d), 39, reference is made to a motorist who knows of the customary practice of the railroad to warn motorists of approaching trains. The evidence regarding the driver's familiarity with the crossing and its protection was therefore admissible to support plaintiff's contention that the driver, as well as the 'plaintiff, was entitled to place some reliance upon the upright gates at the crossing.

An important witness for the plaintiff was a cab-driver who said he saw the collision and also testified that plaintiff's car passed his cab, which was then stationary three or four blocks away from the railroad crossing. During his cross-examination he could not estimate the speed of the automobile in which plaintiff was riding, at the time it passed him, but he said he pulled out after the automobile passed and ''I was

going 30 or 32 miles per hour and I was picking up speed, catching him." The cabdriver said that his cab could not be driven more than 35 miles per hour because the governor on the cab prevented it. Upon defense, the sergeant of traffic of the Toledo police was interrogated as to whether he had any experience with governors and whether a cab with its governor set at 35 miles per hour could go faster than that rate. Objection to this line of testimony was sustained and the defendant was not permitted to pursue the matter further. There was no tender or offer to prove. Defendants contend that no tender was required, and cite *Banks* v. *Canton Hardware Co.*, 156 Ohio St., 453, 103 N. E. (2d), 568. In the *Banks case*, however, the court had erroneously refused to hear any evidence in support of the plaintiff's case, and the prejudicial character of the error was apparent from the record. The Supreme Court reaffirmed the principle announced in *Smith* v. *Rhodes & Wilt,* 68 Ohio St., 500, 68 N. E., 7, that in the absence of a profert a reviewing court can not determine whether the action of the trial court was prejudicial. See, also, *Maxwell Motor Corp.* v. *Winter,* 118 Ohio St., 622, 163 N. E., 198. Furthermore, the questions were not directed to the governor on the cab, to which the evidence sought to be refuted related. The answers sought would be hypothetical and would relate to a collateral issue, the possible speed of the witness' own cab. The termination of this line of inquiry was therefore within the sound discretion of the court.

Upon plaintiff's request, the court properly instructed the jury that any negligence on the part of the driver could not be imputed to the plaintiff, and if they found the gates were upright, the plaintiff was entitled to place some reliance upon the indication of safety which the upright gates implied.

Error is also assigned as to the refusal of a number of special instructions requested by the defendants before argument. Thirty-five requests were submitted and seven were given. In *American Steel Packing Co. v. Conkle,* 86 Ohio St., 117, 99 N. E., 89, the Supreme Court severely criticized the giving of an unreasonable number of charges. Although prejudicial error may be committed by giving an erroneous statement of the law applicable to the issues or by giving an unreasonable number of special charges, prejudicial error can not be predicated upon the rejection of a large number of special instructions, even though they may be couched in proper terminology. As stated by the court in the *Packing Company case:* "This privilege accorded by the statute ought to be reasonably exercised." See, also, *Fairchild* v. *Lake Shore Electric Ry. Co.,* 101 Ohio St., 261, 274, 128 N. E., 168.

We have, however, reviewed the twenty-eight charges refused and find no error in refusing them. Several of them present correct abstract propositions of law which were properly refused on that ground alone. Others were properly rejected as inapplicable to the facts or the issues in the case. Charges relating to imputed negligence, joint enterprise and intoxication of the plaintiff and his driver, considering the language employed therein, were properly rejected. Charges based upon the principle announced in *Reed, Admr.,* v. *Erie Rd. Co.,* 134 Ohio St., 31, 15 N. E. (2d), 637, and *Capelle* v. *Baltimore & Ohio Rd. Co.,* 136 Ohio St., 203, 24 N. E. (2d), 822, did not properly apply the principle to the evidence and issues present in the case and were also properly refused. The request regarding an inference of contributory negligence neglected to limit such inference to one arising from plaintiff's case. In the absence of evidence that three people riding in the front seat of the car interfered with its

operation or obstructed the view of the driver, the instructions on that subject were properly refused.

Counsel for defendants assert that under *Schreiber* v. *National Smelting Co., supra,* defendants' requests Nos. 9 and 34 should have been given. Each of the tendered requests lacked certain essential elements present in the charge approved in the *Schreiber case,* and they were also properly refused.

We find no prejudicial error in the general charge. Upon defendants' request, the court instructed the jury regarding the duties of the driver of an automobile under Sections 6307-20, 6307-21 and 6307-60, General Code, and with respect to the prima facie speed limit on Phillips avenue. Under *Schreiber* v. *National Smelting Co., supra,* instructions relating to negligence of a third party are proper. The court also referred to several proximate causes contrary to the principle announced in *Conor* v. *Flick,* 64 Ohio App., 259, 28 N. E. (2d), 657, that "however many proximately contributing causes thereto there may be, there can be but one proximate cause." So far as the jury is concerned, it is largely a distinction without a difference, and was not prejudicial to the defendants, since they were insisting that the injury was due to the negligence of the driver.

Upon the issue of negligence in failing to lower the gates, the evidence greatly preponderates in favor of the defendants, but there is some evidence which, if believed by the jury, as it evidently was, supports the claim of the plaintiff. Except under the doctrine of incontrovertible facts which refute a witness' testimony, the Court of Appeals may not invade the province of the jury and disbelieve the testimony of a witness. If a verdict is supported by any competent, credible evidence which goes to all the essential elements of the case, the judgment may not be reversed as against the manifest weight of the evidence.

Counsel for plaintiff in his argument to the jury made certain disparaging remarks about the tower watchman and then said:

''This is the old gentleman in the tower. * * * and there is blood on his hands, there isn't any question about it, that is the man who had the duty of getting those gates down, the man whose failure to get those gates down caused the death of two fine people.
'' * * *

''There isn't any doubt, ladies and gentlemen, that that has preyed on his mind, and he has tried to build up in his mind a justification that he did everything he could, over the years, and that has grown.
'' * * *

''Now, let's consider some of his other testimony—how has his mind reacted and what has he done to build up an excuse—an alibi, if you please—that 'I am not responsible for the death of these people.'
'' * * *

''I submit to you, is just bald untruth. He was trying to mislead this jury.
'' * * *

''And he admitted, ladies and gentlemen, that he had lied to you the day before, deliberately lied.''

Later on, counsel also said:

''Mr. Rhinefort is trying to tell this jury that the railroad can drive its trains at any speed it wishes and the public be damned. That is what it amounts to. And he is asking this jury to justify them and tell them that they can do that, and that they can go out and kill people at terrific speeds, at any time they want.

''Well, that doesn't happen to be the law. They have tried to cast aspersions, as I said, upon the character of these parties. I don't think they have to say 'We can do anything we want to, we can not do anything wrong. We operated our trains at any speed

we desire. We can go out and kill people, and then we can come into court and crucify their memories.' That is what they are trying to do.

"They are saying that they can drive through crowded cities, they can have a buzzer system set out which only gives a matter of a few seconds to a poor old man they put in a tower to get the gates down, and they can come through there 90—nay, 100 miles an hour, if they want to, and if they kill somebody, they say 'We want to go scot free,' and they are asking this jury to do that."

Such inflammatory argument can not be condoned and on its face would tend to incite the jury, possibly contributing to the excessive verdict for three-fourths of the amount sought in the prayer. Somewhat similar remarks have been disapproved and held prejudicial by this court and also by the Supreme Court. *Porter, an Infant,* v. *Toledo Terminal Rd. Co.,* 152 Ohio St., 463, 90 N. E. (2d), 142; *Book, a Minor,* v. *Erskine & Sons, Inc.,* 154 Ohio St., 391, 96 N. E. (2d), 289. As in the *Porter case, supra,* the overruling of the objections to this argument may have raised an inference of approval thereof by the court in the minds of the jury. With or without objection, the court should have interfered and promptly instructed the jury to disregard the objectionable language. Cf. *Golamb* v. *Layton,* 154 Ohio St., 305, 95 N. E. (2d), 681.

The verdict is also excessive in its amount and is not supported by the evidence. Plaintiff suffered severe injuries. The most serious one was injury to the radial nerve of his left arm, which has resulted in permanent but partial paralysis of his left arm and hand. Apparently he has no other permanent injury. He can walk, swim, drive his own car and engage in his practice of medicine. During the first year after he was discharged from the hospital he made $6,000 in

the practice of his medical profession in Media, Pennsylvania, where he opened an office. Upon graduation from medical schools and completion of his internship, he entered the service where he performed some surgery and handled orthopedic matters. While on terminal leave he was involved in the accident which prevented his practicing for a period of almost two years. He testified that on account of the disability to his left arm he is unable to practice surgery, orthopedics or obstetrics; that during the fifteen months prior to the trial he had been compelled to refuse and to refer to other physicians 100 cases of surgery, 25 orthopedic and 50 obstetrical cases; and that the usual charge in his community is $100 for surgery and obstetrics and $35 for orthopedic cases.

But this is not a case of total disability where loss of livelihood is suffered. Plaintiff is able to continue the practice for which he qualified, medicine rather than surgery. In order to determine prospective earnings from another branch of medicine which plaintiff may have lost as a result of his injured arm, there should be some evidence to disclose what his earnings would be without engaging in surgery or other branches as a basis for computing his prospective loss of earning power. The plaintiff is entitled to recover only for his *probable* loss of earnings during his *probable* professional career. *Bartlebaugh* v. *Pennsylvania Rd. Co.*, 150 Ohio St., 387, 390, 82 N. E. (2d), 853. Ordinarily, loss of earning capacity is proven by evidence of the earnings of the injured person before and after the injury. 25 Corpus Juris Secundum, 619, Section 87. Plaintiff should not be denied recovery for diminished earning capacity because he is unable to present evidence of earnings before his accident in contrast with lesser earnings thereafter, but there should be some substantial evidence of the probable

effect upon his future earnings and the probability that he would enjoy a greater income by engaging in surgery, orthopedics and obstetrics in comparison with his probable income as a general practitioner or specialist in some branch of medicine in which his disability would not impair his capabilities. Proof with certainty or mathematical exactness is not required, nor need the proof be clear and indubitable, but the damages can not be left to mere conjecture. 25 Corpus Juris Secundum, 827, Section 162. Probability, not possibility, is requisite. *LoSchiavo* v. *Northern Ohio Traction & Light Co.,* 106 Ohio St., 61, 138 N. E., 372, 27 A. L. R., 424. See annotations in 9 A. L. R., 510; 27 A. L. R., 431; 63 A. L. R., 142; 122 A. L. R., 297. Cf. *Brandt* v. *Mansfield Rapid Transit, Inc.,* 153 Ohio St., 429, 92 N. E. (2d), 1.

We have considered each of the other assignments of error and find none of them prejudicial. But the inflammatory argument of counsel constituted error prejudicial to the defendants. We also find that the damages awarded are excessive and appear to have been given under the influence of passion and prejudice. The judgment is therefore reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

CONN and SAVORD, JJ., concur.