[Cite as *Carter v. Children's Emergency Servs., Inc.*, 2020-Ohio-509.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TAYLOR L. CARTER, et al. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28454 |
| | : | |
| v. | : | Trial Court Case No. 2016-CV-4351 |
| | : | |
| CHILDREN'S EMERGENCY | : | (Civil Appeal from Common |
| SERVICES INC., et al. | : | Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 14th day of February, 2020.

. . . . . . . . . . .

JOHN A. SMALLEY, Atty. Reg. No. 0029540, 131 North Ludlow Street, Suite 1400, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellant

JEFFREY R. TEETERS, Atty. Reg. No. 0061801, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202
      Attorney for Defendants-Appellees, Blue Ribbon Billing Company and Children's Emergency Services

DAVID A. EBERLY, Atty. Reg. No. 0067007, 2321 Kemper Lane, Suite 100, Cincinnati, Ohio 45206
      Attorney for Defendant-Appellee, Team Health Holdings, Inc.

. . . . . . . . . . . .

HALL, J.

{¶ 1} This case concerns 12 minors who, between 2012 and 2016, were injured (most in auto accidents) and received medical treatment in the emergency department at Dayton Children's Medical Center.[1] At that time, the emergency department was run by Children's Emergency Services, Inc. (CES). Each minor hired the law firm of Dyer Garofalo Mann & Schultz to bring a personal-injury action against the defendants. Ultimately, all the personal-injury actions were settled, and each settlement included an amount to be paid to CES for the medical treatment that CES had rendered. Each minor authorized his or her attorney to pay CES out of his or her settlement. Several of the minors asked the probate court to approve their settlements.

{¶ 2} In August 2016, the minors, or a parent,[2] brought an action against CES, Team Health Holdings, Inc. (which had purchased CES earlier that year), and Blue Ribbon Billing, LLC (the defendants), alleging that the defendants had violated R.C. 1751.60 by seeking compensation for medical services from patients directly.[3] The plaintiffs alleged that the defendants were required by statute to submit their bills to their health insurance companies. The plaintiffs also alleged breach of contract, violations of public policy, violations of the Ohio Consumer Sales Practices Act (OCSPA), violations of the federal Fair Debt Collection Practices Act (FDCPA), fraud, conversion, and unjust

---

[1] The minors are referred to as T.C., D.G., A.E., K.K., J.G., S.P., S.B., M.L., B.D., R.N., C.L., and K.C.

[2] The plaintiffs are T.C. individually, D.G. individually, A.E. individually, the mother of K.K., the mother of J.G., the father of S.P., the mother of S.B., M.L. individually, the mother of B.D., the mother of R.N., the mother of C.L., and the mother of K.C.

[3] The plaintiffs also requested class certification on behalf of all others similarly situated.

enrichment.

{¶ 3} As the case progressed, many claims were voluntarily dismissed by the plaintiffs, beginning with the claims for class certification. The OCSPA and FDCPA claims were dismissed on CES's motion for judgment on the pleadings. The claims of five plaintiffs who had had their settlements approved by the probate court were dismissed on CES's motion for partial summary judgment, after the trial court concluded that the claims were barred by collateral estoppel. Eventually, only the R.C. 1751.60 claims of three plaintiffs remained. On these claims, the trial court granted the defendants summary judgment, after concluding that there was no violation of the statute.

{¶ 4} The plaintiffs appealed, challenging several of the trial court's orders. We find no error in any of them, so we affirm.

## Analysis

{¶ 5} The plaintiffs assign four errors to the trial court. The first assignment of error asserts that the trial court erred in granting the defendants' motions for summary judgment. The second asserts that the court erred in overruling the plaintiffs' motion for summary judgment. The third challenges the decision granting, in part, CES's motion for judgment on the pleadings, and the fourth challenges the trial court's decision granting CES's motion for partial summary judgment. To facilitate our analysis, we consider the assignments of error in the chronological order of the challenged judgments.

### A. Partial summary judgment based on collateral estoppel

{¶ 6} The fourth assignment of error alleges that the trial court erred by granting CES partial summary judgment on the claims associated with the minors who had had their personal-injury settlements approved by the Montgomery County Probate Court.

{¶ 7} The trial court, in a February 7, 2017 decision, found that for four of the plaintiffs[4] the legality of paying CES for medical services rendered out of the settlements had been litigated and decided in their prior probate-court actions; thus, the court concluded that the claims of these plaintiffs were barred by collateral estoppel. A fifth plaintiff[5] later dismissed her claims after acknowledging that the trial court's decision also applied to her, because she too had had her settlement approved by the probate court. We agree with the trial court.

{¶ 8} Under the doctrine of collateral estoppel, "if an issue of fact or law actually is litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action * * *, whether on the same or a different claim[,] * * * with another person unless he lacked [a] full and fair opportunity to litigate that issue in the first action, or unless other circumstances justify according him an opportunity to relitigate that issue." *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 74, 369 N.E.2d 776 (1977). And we have said that a party may use " 'non-mutual defensive collateral estoppel when a party against whom the doctrine is asserted previously had his day in court and was permitted to fully litigate the specific issue sought to be raised in a later action.' " *Carpenter v. Long*, 196 Ohio App.3d 376, 2011-Ohio-5414, 963 N.E.2d 857, ¶ 39 (2d Dist.), quoting *Hoover v. Transcontinental Ins. Co.,* 2d Dist. Greene No. 2003-CA-46, 2004-Ohio-72, ¶ 17.

{¶ 9} Here, before the present action against CES was filed, each of the five minors had filed an "Application to Settle Minor's Claim(s)" in the probate court, which asked the

---

[4] D.G., the mother of J.G., the father of S.P., and the mother of S.B.

[5] A.E.

court to approve their personal-injury settlements under R.C. 2111.18. Each application included a request that CES be paid unreimbursed medical expenses in full. The settlement-disbursement sheets specifically identified CES and an amount that each minor requested CES be paid out of his or her settlement proceeds. The probate court approved all the proposed settlements. Later, each minor filed a distribution report stating that CES had been paid the proposed amount. The probate court approved all the distributions.

{¶ 10} The evidence shows that the five minors were parties in separate probate-court actions in which payment from their settlement proceeds to CES for medical services rendered was directly litigated. These minors expressly asked the probate court to order payments to CES out of their settlement proceeds, and the court granted their requests. Plainly, the legality of paying CES out of the settlements was essential to the probate court's judgments. These minors had a full and fair opportunity to litigate before the probate court the issue of whether CES should receive payment from their settlement proceeds.

{¶ 11} The plaintiffs argue that the issue was not actually litigated in the probate court and that simply having an opportunity to litigate is not sufficient. We believe that an opportunity to litigate is sufficient when the issue is essential to the court's judgment. In such cases, the issue is necessarily decided, if only implicitly. Here, the probate court necessarily decided that it was not unlawful to pay CES out of settlement proceeds.

{¶ 12} The plaintiffs also argue that the probate court was not a required or proper venue to litigate this issue. We disagree. R.C. 2111.18 places the control and approval of a minor's personal-injury settlement and distribution of money under the probate

court's jurisdiction. "The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C). We find no statute that limits or denies the probate court's power to decide the issue raised here.

{¶ 13} Not only were these plaintiffs' claims barred by collateral estoppel, but they were also barred by judicial estoppel.

> "The doctrine of judicial estoppel 'forbids a party "from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." ' " *Griffith v. Wal-Mart Stores, Inc.* (C.A.6, 1998), 135 F.3d 376, 380, quoting *Teledyne Industries, Inc. v. Natl. Labor Relations Bd.* (C.A.6, 1990), 911 F.2d 1214, 1217, quoting *Reynolds v. Commr. of Internal Revenue* (C.A.6, 1988), 861 F.2d 469, 472-473. "Courts apply judicial estoppel in order to 'preserve[ ] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing to suit an exigency of the moment.' " *Id.*, quoting *Teledyne* at 1218. "The doctrine applies only when a party shows that his opponent: (1) took a contrary position; (2) under oath in a prior proceeding; and (3) the prior position was accepted by the court." *Griffith* at 380.

*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 25.

{¶ 14} In the probate-court actions here, the minors' position was that CES should be paid out of their settlement proceeds. Indeed, the minors expressly asked the probate court to approve payment to CES out of their settlement proceeds. We note that no minor

objected to the proposal that CES be paid or appealed the probate court's final judgment, which explicitly stated that CES "shall be paid from the settlement proceeds." In the present action, though, the plaintiffs take the position that CES should not be paid out of their settlement proceeds, and that doing so was unlawful. This new position is plainly inconsistent with the prior position.

{¶ 15} The fourth assignment of error is overruled.

## B. Judgment on the pleadings on the OCSPA claims

{¶ 16} The third assignment of error alleges that the trial court erred by granting, in part, CES's motion for judgment on the pleadings. In a February 1, 2017 order, the trial court dismissed all the claims alleging that CES violated the OCSPA. CES contends that this assignment of error is moot because all the OCSPA claims have been dismissed. We agree.

{¶ 17} The trial court's order dismissed the OCSPA claims brought in the original complaint by seven of the plaintiffs. The claims were reasserted in the amended complaint by all 12 plaintiffs. But subsequently, each plaintiff's OCSPA claim was dismissed. One plaintiff voluntarily dismissed the claim[6]. The claims of five other plaintiffs were barred by collateral estoppel.[7] The claims of the remaining six plaintiffs were dismissed by an agreed order.[8] No OCSPA claim remained, so no live controversy existed on the issues raised in this assignment of error.

---

[6] T.C. (Plaintiffs Notice of Voluntary Dismissal, Aug. 14, 2018).

[7] D.G., the mother of J.G., the father of S.P., the mother of S.B., and A.E.

[8] M.L., the mother of B.D., the mother of K.C., the mother of K.K., the mother of C.L., and the mother of R.N. (Agreed Entry of Partial Dismissal of Claims, Jan. 8, 2019).

{¶ 18} The third assignment of error is overruled.

## C. Summary judgment on the R.C. 1751.60 claims

{¶ 19} The first assignment of error alleges that the trial court erred by granting CES's, Blue Ribbon's, and Team Health's motions for summary judgment.

{¶ 20} Summary judgment is appropriate if "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); Civ.R. 56(C).

{¶ 21} By the time the defendants moved for summary judgment, there were only three plaintiffs' left,[9] and their only remaining claim alleged a violation of R.C. 1751.60. On June 11, 2019, the trial court granted CES's and Blue Ribbon's motions for summary judgment on these claims. Two days later, on June 13, the court granted Team Health's motion and entered summary judgment on the R.C. 1751.60 claims against it. The trial court concluded that none of the defendants had violated the statute.

{¶ 22} R.C. 1751.60(A) provides: "Except as provided for in divisions (E) and (F) of this section, every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers,

---

[9] The mother of K.K., the mother of C.L., and the mother of R.N.

except for approved copayments and deductibles."

**{¶ 23}** The plaintiffs argued that CES violated the statute by seeking compensation for medical services rendered from the plaintiffs directly, out of their personal-injury settlements, instead of from their health insurance companies. But the trial court concluded that CES did not "seek compensation" from the plaintiffs. The court found that the plaintiffs' attorneys in their personal-injury actions requested account statements from CES, and that the plaintiffs explicitly consented and authorized their attorneys to pay CES the amounts listed in the statements out of their settlements. The court also concluded that the statute did not apply to Blue Ribbon or Team Health because neither was a "provider" or a "health care facility," as those terms are statutorily defined. *See* R.C. 1751.01(Y) and (L). Finally, the trial court concluded that the plaintiffs' claims failed because, even if CES did violate the statute, the plaintiffs failed to present evidence that they incurred any damages from the violation. While the plaintiffs challenge all three of the trial court's conclusions, we consider only the question of damages, because it is dispositive.

**{¶ 24}** Damages is an essential element of the plaintiffs' R.C. 1751.60 claims. As the trial court pointed out, unlike the Ohio Consumer Sales Practices Act, R.C. 1751.60 does not provide for statutory damages. Assuming that the defendants did violate the statute, the plaintiffs could prevail only if they showed that they suffered compensable harm. At this stage, the plaintiffs must show only that there is a genuine issue of material fact as to their damages. Their claims cannot survive summary judgment if the plaintiffs fail to present evidence of damages. *See Doner v. Snapp*, 98 Ohio App.3d 597, 601, 649 N.E.2d 42 (2d Dist.1994); *Wilson v. Wilson*, 2d Dist. Montgomery No. 21443, 2007-Ohio-

178, ¶ 5. Evidence of the mere "possibility" of damages is insufficient. *Gibbons v. Baltimore & O. R. Co.*, 92 Ohio App. 87, 100, 109 N.E.2d 511 (6th Dist.1952), citing *LoSchiavo v. N. Ohio Traction & Light Co.*, 106 Ohio St. 61,138 N.E. 372 (1922); *Swartz v. Steele*, 42 Ohio App.2d 1, 5, 325 N.E.2d 910 (8th Dist.1974). "Probability, not possibility, is requisite." *Gibbons* at 100. The plaintiffs do not dispute that they must prove damages to succeed on their claims. They argue, rather, that they satisfied this requirement. On this, we must disagree.

{¶ 25} Two of the plaintiffs[10] were each specifically asked in an interrogatory to identify their damages. Their identical responses were "Possible impact to credit if Defendants claim bill to be due and owing." But neither plaintiff presented any evidence of credit damage. In a document request, each was asked to "[p]roduce all documents related to damages that [the plaintiff] claims to have suffered as a result of the acts alleged in the First Amended Complaint." Each responded: "None in Plaintiff's possession." Thus, any impact on their credit was purely speculative. As for the third plaintiff,[11] while not asked about damages in an interrogatory, the plaintiff was asked to "[p]roduce all documents related to damages that [the plaintiff] claims to have suffered as a result of the acts alleged in the Complaint." The plaintiff responded simply, "Attached." It is unclear which documents in the record, if any are in the record, the plaintiff deemed responsive.

{¶ 26} The plaintiffs also asserted other ways in which they were harmed. In the amended complaint, the plaintiffs alleged that by not billing their health insurance companies, CES caused the plaintiffs to pay more for medical services than the health

---

[10] The mother of C.L. and the mother of R.N.

[11] The mother of K.K.

insurance companies would have paid under their contracts with CES. The chief problem with this allegation is that the plaintiffs presented no evidence that there would be a disparity, let alone the amount of the disparity. The plaintiffs say that they were harmed by being forced to pay CES out of their personal-injury settlements and by CES's aggressively seeking compensation from their attorneys. But the evidence, or rather lack thereof, did not support these allegations. We see no evidence of any aggressive action by CES. The plaintiffs admit that CES never contacted them directly demanding payment. Rather, the record shows that the plaintiffs' attorneys requested billing statements from CES and that the plaintiffs voluntarily paid CES the amounts shown on the statements out of their settlements.

{¶ 27} The plaintiffs fail to show that a genuine issue of material fact existed as to their damages from the defendants' alleged violation of R.C. 1751.60. The record shows that none of the minors' bills was then due and owing. There was no evidence that CES sought to collect money from any of the plaintiffs. It was undisputed that the minors, on the advice of their attorney, knowingly and voluntarily authorized their attorney to pay CES the amount owed out of their settlements. Given the lack of evidence of damages, the trial court properly granted the defendants' motions for summary judgment.

{¶ 28} The first assignment of error is overruled.

### D. Denying the plaintiffs summary judgment

{¶ 29} The second assignment of error alleges that the trial court erred by overruling the plaintiffs' motion for summary judgment on their R.C. 1751.60 claims.[12]

---

[12] The plaintiffs who filed the motion are the mother of K.K., the mother of C.L., and the mother of R.N.

**{¶ 30}** On June 13, 2019, the trial court overruled the plaintiffs' motion for summary judgment against CES for the reasons stated in its decision granting the defendants' motions for summary judgment. The court noted that the plaintiffs failed to show that CES violated R.C. 1751.60, by failing to present evidence that CES sought compensation from them.

**{¶ 31}** We concluded in our review of the first assignment of error that the plaintiffs failed to show that a genuine issue of material fact existed as to their damages for CES's alleged violation of R.C. 1751.60, an essential element of their claims. Because they could not prevail on their claims, the trial court properly overruled the plaintiffs' motion for summary judgment.

**{¶ 32}** The second assignment of error is overruled.

### III. Conclusion

**{¶ 33}** We have overruled each of the four assignments of error presented. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

John A. Smalley
Jeffrey R. Teeters
David A. Eberly
Kenneth Ignozzi
Hon. Timothy N. O'Connell